**KING–SEELEY THERMOS CO.,**
**Plaintiff-Appellee,**

v.

**TASTEE FREEZ INDUSTRIES, INC.,**
**Defendant-Appellant.**

**No. 15234.**

United States Court of Appeals
Seventh Circuit.

March 14, 1966.

Rehearing Denied April 12, 1966.

Morris Spector, Caliste J. Alster, Chicago, Ill., for defendant-appellant.

William J. Stellman, Chicago, Ill., Don K. Harness, Cyrus G. Minkler, Harness, Dickey & Pierce, Detroit, Mich., William R. McNair, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This is an appeal by Tastee Freez Industries, Inc. from the judgment of the district court allowing King-Seeley Thermos Co. damages for and an injunction against infringement by Tastee Freez of claims 2 and 4 of King-Seeley's United States Letters Patent No. 2,753,694 ('694), issued July 10, 1956, through its manufacture, use, and sale of certain flake ice making machines.[1]

Flake ice consists of small, irregularly sized and shaped pieces of ice. When most satisfactorily made, the pieces of ice will not stick together when stored in a storage bin, but are easily scooped and handled. Machines which can satisfactorily manufacture such ice are in great demand for use in restaurants, drive-ins, hospitals, and similar institutions and establishments.

In 1950, a machine which could make flake ice was invented by one John Nitsch, to whom Letters Patent No. 2,-597,515 ('515) issued on May 20, 1952 for the invention.

Nitsch submitted his machine to King-Seeley's predecessor, which bought the

---

1. The same patent was litigated in the Tenth Circuit. There the district court held the patent invalid, but the court of appeals reversed, holding the patent valid over the prior art. King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., et al., 354 F.2d 533 (Dec. 27, 1965).

rights to the machine and patent '515 from him.[2]

The Nitsch machine, however, did not consistently produce satisfactory ice, for the ice it made was either too wet or slushy, a condition which caused the ice to weld together in storage bins; or, if the Nitsch machine was adjusted to correct this condition, it would freeze and jam.

King-Seeley developed and received patent '694 for an ice flake or chip producing machine, which was an improvement over the Nitsch machine. Claims 2 and 4 of patent '694 read as follows:

"2. An ice chip producing machine comprising an elongated cylindrical freezing chamber having one end thereof disposed at a higher elevation than the other and closed at the lower end thereof,

refrigeration means surrounding a portion of said cylinder to form a freezing chamber therewithin, means for supplying water to said freezing chamber, an ice conveying auger having the spiral edge thereof disposed in closely spaced relation to the inside wall of said chamber and co-extensive therewith to remove ice layers from the inside wall thereof and deliver the same upwardly out of said freezing chamber,

said cylinder extending upwardly above said freezing chamber and having an opening formed in one side thereof adjacent the top of said chamber at the upper end of said auger,

said auger having an upwardly disposed shaft extending above the upper end thereof,

and a bushing member surrounding said upwardly extending shaft portion to rotatably

support the same and tightly fitting within the upwardly extending portion of the cylinder to be rigidly supported thereby,

the lower end of said bushing having a generally beveled surface and extending downwardly behind the opening in said cylinder with the lower beveled end terminating substantially adjacent the upper end of said auger to disintegrate the ice masses delivered upwardly from said auger, removing the same from said shaft and discharge said finely divided masses outwardly through said opening in the cylinder."

"4. An ice chip producing machine comprising an elongated freezing chamber having an open end, means for supplying water to the inside of said freezing chamber,

means for cooling at least a portion of said freezing chamber to freeze ice on the inside surface thereof, an ice conveying auger rotatably mounted in the freezing chamber with its spiral edge disposed in closely spaced relation to the inside wall of said chamber,

means for constantly rotating the auger to cause said spiral edge to shear off ice frozen on the inside wall of the chamber constantly to deliver ice to said open end of the freezing chamber, and an outwardly inclined ice disintegrating and removing member positioned in said open end of the chamber and provided with an ice peeling moldboard-like surface positioned to engage ice carried by the auger,

said constant rotation of the auger serving positively and constantly to convey ice to and force it against said mold-board-like surface to break up and positively remove ice from the auger and discharge it as discrete ice chips."

In the operation of the machine, an upright cylindrical freezing chamber is filled with water almost to the top. The water bathing the inside wall of the chamber freezes on it. A rotary auger scrapes the ice from the inside wall of the chamber, moving it upwards as a column of thin, wet layers of ice. When the column of ice reaches the top of the chamber, it

2. The distinction between King-Seeley and its predecessor is not relevant for purposes of this appeal, and no effort will be made to distinguish them further.

meets an "ice peeling mold-board-like surface" which deflects the ice sidewards through an opening, from which the ice falls into a storage bin. This ice peeling surface, however, serves a further and most important function, one not claimed in patent '694.

As the rising column of ice is forced up against the ice peeling surface, the thin, wet layers of ice are compressed, excess water trapped between the layers of ice is squeezed out, and the ice is delivered to a discharge opening in a dry condition. This dryness of the ice is critical, for without it, the ice and machine would suffer the same problems which occurred in the operation of the Nitsch ice machine; and the ice made would not be acceptable commercially.

The ice making machines of Tastee Freez which are the subject of this suit operate in a fashion similar to King-Seeley's machines. However, Tastee Freez claims that its machines do not have "ice peeling" devices which meet the ascending column of ice. Instead, its machines use a variety of devices, none of which peel the rising column of ice, but which purportedly merely divert it until it is discharged by rotation, or which divert and shape the advancing ice into nuggets prior to its discharge.

The trial court, which had listened to experts for both sides, found with respect to the expert testimony:

"26. The expert testimony of Plaintiff's expert witnesses based on experiment, tests and the building and working with flake ice machines was much more believable than the testimony of Defendant's expert witness who had had no prior experience with flake ice machines and whose testimony was not based on any tests or experiments relating to such machines. Defendant's expert's testimony about the prior art and its applicability to the validity of claims 2 and 4 of the '694 patent was by his own admission the result of hindsight observation and speculation."

Comparing Tastee Freez's devices with those of King-Seeley, the trial court found:

"12. The demonstrations of all three acused models of Defendant's machines and of Plaintiff's patented machines clearly established that all of these machines make satisfactory flake ice substantially alike. The demonstrations, which permitted the action of the ice against the various breaker heads in the freezing cylinders to be seen, established that in all of Defendant's accused machines there were breaker heads which had mold-board-like surfaces against which the slushy column of ice was impinged so that the ice was compressed, water was squeezed out and individual or discrete ice chips were discharged through the side opening in the cylinder. This is the same action that occurs in the machine disclosed in the '694 patent in suit.

"13. While defendant's machines differ somewhat in form from the machine disclosed in the drawing of the '694 patent all of Defendant's accused machines accomplished the same result in substantially the same way as the machine disclosed in the '694 patent in suit.

"14. All of Defendant's accused machines include the same combination of parts as the machine shown in the '694 patent including a breaker head or ice disintegrating and removing member positioned in the open end of the freezing chamber or cylinder and provided with an ice peeling mold-board-like surface positioned to engage ice carried by an auger in the cylinder so as to break up and positively remove ice from the auger and discharge it from the cylinder through openings in the wall thereof.

"15. The term 'mold-board-like surface' which appears in claim 4 of the '694 patent is not limited in meaning to the exact shape or form shown in the drawings of the '694 patent but includes a surface having a plow-like function which will deflect material which is impinged against it as defined by the expert witnesses of both Plaintiff and Defendant, Webster's dictionary and the several plow patents in

evidence which show a wide variety of types and shapes of mold boards."

With respect to claim 2 of the patent in suit, the trial court found:

"18. Both the machine disclosed in the '694 patent and Defendant's Model 25 machine have the lower ends of the freezing cylinder closed as called for in claim 2 of the '694 patent except for means for supplying water to the freezing chamber and claim 2 calls for such means. In both of such machines the breaker heads function as a bushing for the auger shaft as called for in claim 2 even though in Defendant's Model 25 machine other bearings or bushings are provided for the auger shaft. Claim 2 of the '694 patent is infringed by Defendant's Model 25 machines."

Tastee Freez argues that the patent in suit is unenforceable because of King-Seeley's unethical conduct in concealing from the patent office that the Nitsch machine, which was prior art for the '694 patent, had been submitted to them by Nitsch with an element not appearing in the Nitsch patent. This was a triangularly shaped finger of metal placed at the top of the freezing chamber, the function of which was to break the ascending column of ice.

Tastee Freez further urges that the trial court erred in excluding evidence from the file history of King-Seeley's patent 2,825,209 ('209), issued on March 4, 1958, subsequent to the patent in suit. It is claimed that the file history would show that King-Seeley made claims when it sought the '209 patent that the concept which King-Seeley now argues is embodied in its '694 patent, that is, freezing only slushy ice and squeezing out water, was then new. This evidence would tend to show that at the time it received its '694 patent, King-Seeley did not know, and could not therefore in any way claim, that its patented '694 machine would produce desirable ice through compression.

Tastee Freez urges that claims 2 and 4 of '694 are invalid for lack of invention over the prior art.

Finally, Tastee Freez argues that it does not infringe claims 2 and 4 of '694 with its machines here in suit.

 Patents are presumed to be valid, and a party asserting invalidity has a heavy burden of establishing invalidity by clear and convincing evidence. 35 U.S. C.A. § 282; Devex Corporation v. General Motors Corporation, 7 Cir., 321 F.2d 234, 238 (1963); Hazeltine Research Inc. v. Dage Electric Company, Inc., 7 Cir., 271 F.2d 218, 224 (1959). The trial court held that Tastee Freez had not met its burden of proving invalidity. We agree with the trial court and hold that claims 2 and 4 of the '694 patent in suit are valid over the prior art.

As for Tastee Freez's argument that the patent in suit is unenforceable because of the unethical conduct of King-Seeley in withholding relevant prior art from the patent examiner, testimony by Nitsch before the trial court revealed that the triangular metal finger installed on the machine submitted to King-Seeley had only the function of knocking down the ice and that it in no way served to change the quality of the ice.

In Admiral Corporation v. Zenith Radio Corporation, 10 Cir., 296 F.2d 708, 716–717 (1961), it was stated that "If an applicant knows of prior art which plainly describes his claimed invention or comes so close that a reasonable man would say that the invention was not original but had been anticipated, he will not be excused for failure to disclose his knowledge."

Notwithstanding the fact that the Nitsch machine as submitted to King-Seeley possessed an element of which the patent office examiner was not aware, the Nitsch machine was, as the trial court found, an abortive machine. And, although Tastee Freez presented argument to the trial court in support of its claim of fraud, the trial court found adversely to Tastee Freez on this issue.

 We cannot agree that the metal finger used for breaking the ascending column of ice can be said to have been an anticipation of King-Seeley patent '694.

We agree with the trial court and hold that Tastee Freez failed to discharge its burden of showing that King-Seeley was guilty of fraud or misrepresentation before the patent office.

Tastee Freez argues that a patent is invalid if its specification fails to disclose that which the patentee asserts distinguishes the claims from prior art. It further argues that the entire specification of the '694 patent is that the ascending column of ice is broken by a *splitting* element, a knife-like edge, and then wedged apart to peel it from the auger shaft, and that compression of the ice is not revealed.

The trial court, however, found that while the '694 machine performed the splitting and wedging functions it further compressed the rising ice and squeezed the water out of it.

■ While the '694 specifications do not describe the compressing function, the structure and operation of the machine which the patent discloses do result in the compressing function. A patentee is entitled to all the benefits and advantages of his invention whether or not they are mentioned in the patent. Talon, Inc. v. Union Slide Fastener, Inc., 9 Cir., 266 F.2d 731, 734 (1959) and cases cited there.

Tastee Freez contends, however, that the "inherency" doctrine is not applicable to those benefits or advantages which are not an inevitable result of the construction as described in the patent. It claims that nowhere in the '694 patent is there a disclosure of the concept of making slushy ice initially and then squeezing out the water to make a satisfactory ice.

Evidence before the trial court revealed that the speed of rotation of the auger of the '694 machine could be adjusted, and that this adjustment would affect the softness or wetness of the ice scraped by the auger. The evidence also demonstrated that if the ice on the wall of the cylinder was not somewhat wet or slushy, the machine would freeze up and jam. Thus, if the machine were to run without jamming, wet or slushy ice would be produced.

■■ In order for the trial court to make the findings and draw the conclusions it did, it had to find for King-Seeley on the issue of whether the '694 machine was intended to produce slushy ice. Since none of the findings of the trial court with respect to the '694 patent have been shown to be clearly erroneous, they will not be disturbed. Federal Rules of Civil Procedure, 52(a), 28 U.S.C.A.

■ Tastee Freez sought to introduce evidence of King-Seeley's later '209 patent, in the file history of which King-Seeley apparently claimed that the concept of producing only slushy ice was then new. It is argued that where the file history of a subsequent patent throws light upon the scope of the invention of the patent in suit, the file history of the subsequent patent is admissible into evidence.

While this argument may be correct, it does not have application in this case. Since the duty of the trial court was to determine how a device which embodied the '694 patent in fact operated, its exclusion of the file history of the later '209 patent was proper. The file history of the later patent could not be relevant to a determination of the machine's operation through empirical demonstration.

■ Finally, Tastee Freez denies that it has infringed the patent in suit. Patents, of course, are not limited to the embodiment of the invention described in the specification since the claims of the patent measure the invention. If the accused device achieves substantially the same results in substantially the same way as the patented device, the devices are the same in the eyes of the patent law. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

In this case, the findings of infringement were made by the trial court after a trial with the benefit of expert testimony and demonstrations. These findings of the trial court have not been shown to be clearly erroneous, and they

will not be set aside. Federal Rules of Civil Procedure, 52(a); Graver Tank & Mfg. Co. v. Linde Air Products Co., supra.

We conclude that claims 2 and 4 of the '694 patent in suit are valid over the cited prior art and particularly the Nitsch '515 patent which was before the patent examiner; that the claims in suit fully meet the requirements of patentability under 35 U.S.C.A. §§ 101, 102 and 103 (including non-obviousness); and that the patent was infringed by defendant's charged devices.

Our review of Circuit Judge Pickett's thorough and well-reasoned opinion in King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., et al., 10 Cir., 354 F.2d 533 (Dec. 27, 1965), finds us in complete accord with its holding. We cite it as authority supporting our holdings herein.

For the foregoing reasons, the judgment of the district court on appeal is in all respects affirmed.

Affirmed.