**LaSALLE STREET PRESS, INC.**
**v.**
**McCORMICK & HENDERSON, INC.**
**No. 67 C 1565.**

United States District Court
N. D. Illinois.
May 29, 1968.

---

Howard Clement, Melvin Jager and Robert Cummins, Hume, Clement, Hume & Lee, Chicago, Ill., for plaintiff.

Anthony Zummer and Wilfred Stone, Stone, Zummer & Livingston, Chicago, Ill., for defendant.

MAROVITZ, District Judge.

Cross-Motions for Summary Judgment

Plaintiff, LaSalle Street Press, Inc., charges defendant, McCormick & Henderson, Inc., with infringement of the former's United States Letters Patent No. 3,136,248, entitled "Process and Apparatus for Temporarily Indicating Corrections in Text of Printed Matter". Defendant has filed a counterclaim charging that the patent is invalid and/or not infringed.

Defendant now has moved for summary judgment on the infringement issue alone, and plaintiff has submitted a cross-motion for summary judgment thereon. Both parties apparently believe there are no contested issues of material fact remaining as to infringement, and that the Court is in a position to determine that issue as a matter of law. The parties have filed extensive briefs, documentary and physical exhibits, affidavits, and numerous depositions in connection with their cross motions.

In issue are process claims 1, 2, & 3 of the patent.[1] Essentially, the patent describes a printing process which allows one reading proofs (or "galley sheets") to readily check corrections made in succeeding proofs without re-reading the entire document. The system is of greatest utility for proofreading complex legal or financial documents. It involves temporarily identifying only the corrected lines of printed matter contained on successive proofs. This is done by casting a "readily removable" printing projection on the type slug containing the corrected type face, integral therewith and in addition thereto, so that a proof sheet prepared from such a type slug will have an identifying symbol in the margin, in the form of a short vertical line, to indicate those lines of the proof sheet that have been

---

1. Although there is some dispute, claim 4, which is an apparatus claim covering the specific type slug used, is apparently not asserted by plaintiff to be infringed. Plaintiff specifically concedes in briefing these motions that claim 4 is not in issue. Although defendant contends that claim 4 is before the Court, and is not infringed, the relevant portions of the Complaint indicate that plaintiff explicitly charged infringement of its process claims (claims 1, 2 & 3), while making no specific reference to claim 4. However, in paragraph 7 of its reply to defendant's counterclaim, plaintiff does deny that defendant has a "right to manufacture and use *the accused type slug and* to use the accused system." (emphasis added). The form of that reply would indicate plaintiff's willingness to put claim 4 in issue. However, under the liberal rules of pleading, plaintiff would be free at any time, with leave of court, to amend its pleadings to clarify its position as to claim 4. See Federal Rules of Civil Procedure, Rule 15(a) and (b). Although we do not believe it is in issue, and plaintiff so concedes, we suggest plaintiff amend the relevant pleadings to leave no room for doubt. Were it in issue, it is likely that we would find it is not infringed, since defendant's apparatus admittedly does not include a printing projection "having a relatively narrow base portion".

corrected. A "type slug" constitutes a single line of type, which, combined with other slugs, comprises a page of type. After the corrections have been approved, the printing projection is removed, and final copies are prepared using the same type slug with the projection removed.

Defendant uses essentially the same process to achieve the same purpose.[2] In the briefs, its process is referred to as a Sequential Proof Alteration Identification Process. It posits its claim of non-infringement upon two asserted distinctions from the claims of the patent in suit, as construed in light of the specifications thereof. Primarily, defendant argues that its process does not have a "readily removable printing projection", as called for by claims 1–3. Secondly, defendant contends, it achieves a different result. That is because its printing projection consists of sequential numerals indicating upon which of the various proofs corrections were made, rather than consisting of mere identifying symbols in the form of a short vertical line, which indicate that corrections were made, but do not reveal upon which proof each specific correction was effected. This is the so-called "sequential" feature of defendant's process.

Since there is no argument to the contrary, defendant apparently acquiesces in plaintiff's contention that it practices the remainder of claims 1–3, relating to the process of casting slugs into a line of type, assembling the slugs into a page of type, preparing a printed proof of said page, removing at least one of the original slugs, recasting and substituting a replacement slug for each one removed (which includes the disputed temporary printing projection), preparing a second proof with the substituted slug, and removing the printing projection from the substituted slug prior to additional printing. Except for the inclusion and removal of the temporary printing projection, which is the crux of the invention, the other steps are normal constitutents of a regular printing process. From an examination of the documentary evidence available, it is evident to the Court, aside from defendant's acquiescence, that defendant practices these steps.

The three process claims in issue call for a "readily removable printing projection". Defendant claims that it does not practice or infringe that aspect of the claims. In reaching that conclusion, defendant apparently limits the quoted portion of the claims by the terms of the specifications. Specifically, it contends that "readily removable" means the printing projection is one which does not have a base or pedestal, and which is more readily removable than the type face on the slug which constitutes the regular line of type. It cites lines 36–52 of Column 2 of the specifications as support therefor:

"As shown in FIGURE 2, the type 14 is normally cast with a base portion 18 forming what might be termed a pedestal for the type characters. This base or pedestal is formed integrally with each type character, and contiguous characters preferably have their bases united to form a common base portion. The printing projection 16, on the other hand, is not privided (sic) with any such base or pedestal portion. The absence of such a base portion in the printing projection 16 makes it *more readily removable* from the face of the slug 12. Fortunately, it has been found to be unnecessary to have such a base portion in the printing projection, since a relatively small number of printed copies are normally made while the projection is still in place. On the other hand, the type characters must have a construction firm enough to insure repeated use in the process of printing." (emphasis added).

It is undisputed that defendant's printing projection, in the form of sequential numerals, is precisely as removable as the

2. It has filed an Application for a patent on its process, which is currently pending as Serial No. 556,445, and is entitled, "Method for Preparing Printed Proofs and Device for Use Therewith".

letters used in the type slug. Indeed, if the printed material should require numerals, the same numerals used in the removable printing projection are utilized. The defendant's printing projection has a base identical to that of the letters used for the printed matter—their basic construction is identical. Thus, if the patent is limited by the above quoted portion of the specification, it appears that defendant's process would not infringe, since its printing projection is not "more readily removable" than the type face of the slug.

Plaintiff contends that the specification merely sets forth the preferred embodiment of the patented process, and asserts that the claims are not limited thereby. In lines 11–19 of column 3 of the patent, it is provided:

"In the drawing and specification, there has been set forth a preferred embodiment of the invention, and although specific terms are employed, they are used in a generic and descriptive sense only and not for purposes of limitation. Changes in form and in the proportion of parts, as well as the substitution of equivalents are contemplated, as circumstances may suggest or render expedient, without departing from the spirit or scope of this invention as further defined in the following claims."

Section 112 of Title 35, United States Code, requires the inventor to set forth in the specifications the best mode of carrying out his invention. The specifications contained in the instant patent begin by setting forth the general nature of the invention, and then broadly describe the function of the printing projection as follows: (col. 1, lines 18–24)

" * * * The printing projection provides a temporary identifying symbol for the altered line in the succeeding proof of the printed page, which symbol, in turn, can be readily eliminated prior to the next printing operation by *bodily removal* of the printing projection from the slug, without otherwise disturbing the set type." (emphasis added).

The removal of the projection is further described in the following general terms: (col. 1, lines 28–35)

"When the corrected or changed portions of the type have been approved by examination of such a proof, the printing projections which produce the identifying symbols can be *bodily removed* from the printing face of the type slugs so that subsequent proofs, or final copy, prepared from the same type will not contain any of the identifying symbols which appeared in the preceding proof." (emphasis added).

Then the preferred embodiment of the printing projection is described, and it includes the following paragraph (col. 2 lines 20–35) not quoted by defendant, which immediately precedes the portion quoted by defendant (col. 2, lines 36–52):

"As shown in FIGURE 1, the type slug 10 is also provided on the face 12 with a printing projection 16 disposed in spaced relation to the end of the line of type characters 14. This projection 16 *preferably* is in the form of very narrow upstanding bar of type metal formed integrally with the slug 10, so that in the printing operation it forms a symbol in the form of a short vertical line disposed in spaced relation to the main body of the line of print produced by the type 14 on the slug. Obviously the projection 16 could take any other suitable form, insofar as the nature of the printed symbol produced thereby is concerned. However, it should have a configuration such that it is readily removable from the face of the slug by the use of a simple tool having an edge capable of cutting off the metal forming the projection 16 from the body of the slug when manually applied thereto." (emphasis added).

The specification continues by stating that the preferred embodiment of the *printing projection* "makes it more readily removable from the face of the slug 12." (Col. 2, lines 44–45).

It appears, as plaintiff asserts, that defendant is attempting to limit the claim language, calling for a "readily removable

printing projection," with the language of the specification describing the preferred embodiment. The claim, of course, does not require the printing projection to be "more readily removable" than the type characters. The specification states that a printing projection without a base or pedestal, the preferred embodiment, is "more readily removable from the face of the slug."

■ It is axiomatic, of course, that the claims of a patent limit the invention. United States v. Adams, 383 U.S. 39, 48–49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). But the claims are to be read in light of the specifications, and both are to be read with a view toward ascertaining the invention. United States v. Adams, supra at 48–49, 86 S.Ct. 708; Seymour v. Osborne, 11 Wall. 516, 547, 20 L.Ed. 33 (1870); Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940). However, the specification of the preferred embodiment cannot be construed as a limitation upon the claim, unless it is specifically incorporated therein. The Supreme Court made this clear in Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721 (1934), a case decided before the law was changed to eliminate incorporation by reference, but still binding herein:

> "We may take it that, as the statute requires, the specifications just detailed show a way of using the inventor's method, and that he conceived that particular way described was the best one. But he is not confined to that particular mode of use since the claims of the patent, not its specifications measure the invention. [citing cases * * *] While the claims of a patent may incorporate the specifications or drawings

by reference * * * and thus limit the patent to the form described in the specifications, it is not necessary to embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced to practice. It is enough that the principle claimed is exemplified by a written description of it and of the manner of using it 'in such full, clear, concise, and exact terms' as will enable one 'skilled in the art to make, construct, compound and use the same."

■ Only if the file wrapper history indicates the inclusion of a limitation in the claim necessary to obtain the issuance of the patent over the prior art, can the claim be limited by the specification. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Smith v. Snow, 294 U.S. 1, 16, 55 S.Ct. 279, 79 L.Ed. 721 (1934). The instant file wrapper history admits to no such interpretation. Claims 2 and 3 were allowed promptly on the first Patent Office action, without comment. Claim 1 was allowed shortly thereafter, following the inclusion of minor clarifying amendments which are irrelevant to present considerations.[3]

Only apparatus claim 4 was amended so as to be patentable over prior art patents, which related to the slug construction. In responding to the Patent Office actions which rejected that claim, plaintiff made a final amendment and suggested that neither of the disputed prior art patents suggest "a type slug employing a printing projection that is removably secured by way of a narrow base portion

---

**3.** In the file wrapper, present claims 1, 2, 3 and 4 are referred to respectively as claims 4, 5, 6 and 7. The numbers were changed in an amendment. Present claim 1 was amended to be allowable over prior art Lowensohn Patent, No. 2,002,-293. The Lowensohn Patent disclosed a process for indicating corrections in successive proofs of printed matter, which utilized different colored inks to distinguish corrected lines from the other lines. The Patent Office did not consider Lowensohn a significant reference upon process claims 1–3, and plaintiff made no limitation in those claims to secure their allowance over the prior art. The Lowensohn process, incidentally, was found to be commercially unfeasible long ago by the presidents of both plaintiff and defendant.

* * *." Claim 4 was thereafter approved.[4]

But arguments made during the file wrapper history as to apparatus claim 4 cannot limit process claims 1–3, as to which no limitation was necessary. The law is clear that file history arguments relating to claims not in issue, and not accompanied by corresponding limitations to the claims in issue, cannot create "file wrapper estoppel." The reason was stated long ago by Judge Learned Hand in Auto Pneumatic Action Co. v. Kindler & Collins, 247 F. 323, 328 (2d Cir. 1914):

> "We are far from being willing to establish a rule that arguments made in the Patent Office by the applicant to the examiner are to be taken as a measure of his patent. We read the claims as they are written, like the language of any other formal statement drawn up as the final memorial of the parties' intentions, and we decline to consider what was said arguendo during the passage of the case through the Patent Office, or any other of the preliminary negotiations which the patent itself was intended to subsume."

The Seventh Circuit has reaffirmed that principle often. E.g. Ekco Products Co. v. Chicago Metallic Manufacturing Co., 321 F.2d 550, 555 (7th Cir. 1963); Bishman Mfg. Co. v. Stewart-Warner Corp., 380 F.2d 336, 339–340 (7th Cir. 1967); Welsh Co. v. Chernivsky, 342 F. 2d 586, 590 (7th Cir. 1965); Nasco, Inc. v. Vision-Wrap Inc., 352 F.2d 905, 909 (7th Cir. 1965).

Accordingly, the specifications of the preferred embodiment do not constitute a limitation upon the process claims in issue. Our task, therefore, is to determine whether defendant's process utilizes a temporary printing projection which is "readily removable." Specifically, does the slightly different construction used by defendant's process, employing a printing projection no more removable than

the other type characters on the slug, sufficiently distinguish it from plaintiff's process, to allow a finding of non-infringement? We do not believe so.

▇ That defendant may not practice the preferred mode of plaintiff's invention, cannot avoid infringement if its process is otherwise covered by the claims. If this defense had merit, a patent specification would have to specifically illustrate "all modes" of an invention, not only the "best mode." We rejected a similar argument in American Photocopy Equipment Co. v. Rovico, Inc., 257 F. Supp. 192, 196 (N.D.Ill.1966):

> "Even if defendant's argument is to be interpreted as a contention that claims broader than the specifications and drawings cause invalidity, it must fail. Under Section 112, Title 35, U.S.C., the inventor is required to set forth the *best mode* contemplated to carry out the invention. Thus the claims are, by necessity, always broader than the specifications and drawings. If defendant's arguments were valid, plaintiff would have to submit innumerable drawings of devices covering every conceivable length, of center separator guide plate. This clearly was not envisioned by Section 112, which calls only for specifications describing the 'best mode,' rather than 'all modes,' or all possible embodiments of the invention. There is no inconsistency between the claims herein and the specifications. Thus, defendant's position is unsound." (emphasis original)

The Seventh Circuit agreed in King-Seeley Thermos Co. v. Tastee-Freez Industries Inc., 357 F.2d 875, 880 (7th Cir. 1966). See also American Anode Inc. v. Lee-Tex Rubber Products Corp., 136 F.2d 581 (7th Cir. 1943).

That defendant uses a power-driven router to remove the printing projection, rather than a hand tool, as described in the preferred embodiment, is not signifi-

---

4. Since claim 4 is not in issue, defendant's argument that, as early as 1942, it used the same variety of type slug now used in its process, for printing abstracts of records for the Illinois Supreme Court, is irrelevant to its claim that it does not infringe claims 1–3.

cant on the removability issue. The claims are not limited by that specification. Mr. McCormick, defendant's President and developer of its process, testified (in his deposition) that a "shaver" was probably used by defendant to remove the numerals prior to its obtaining a router. Mr. Barrow, defendant's Vice-President and Superintendent of Production, testified (in his deposition) that hand tools such as a saw or chisel could be used to remove the numerals from defendant's type slugs. And he further admitted that the numerals could be readily removed with a router. Finally, in his affidavit, plaintiff's President Mr. Anderson, who is also the inventor and assignor of plaintiff's patent, stated that, in preparation for this motion, he supervised the construction of sample type slugs similar to defendant's physical exhibits herein. After the slugs were completed, Mr. Anderson used a chisel and clearly removed the projections from the slugs with "a single light tap of a hammer against the chisel * * * without any damage whatsoever to the type face on the slugs." Defendant has not attempted to contradict Anderson's testimony with any denial, sworn or otherwise, that its identifying numeral can be so removed.

From our observation of defendant's physical exhibits, and from the above testimony, it is clear to the Court that the defendant's process employs a printing projection or identifying numeral which is "readily removable."

It is not legally significant that defendant employs a router for removal purposes, for even were its projection only "readily removable" with a router, defendant's process would infringe. Defendant makes no argument that it is not readily removable with a router, as admitted by Mr. Barrow. Infringement of process claims is not avoided by the use of a tool or machine which differs from that mentioned in the patent specification describing the preferred embodiment. As stated nearly a hundred years ago by the Supreme Court, in Cochrane v. Deener, 94 U.S. 780, 787–788, 24 L.Ed. 139 (1876):

"That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. If one of the steps of a process be that a certain substance is to be reduced to a powder, it may not be at all material what instrument or machinery is used to effect that object, whether a hammer, a pestle and mortar, or a mill. Either may be pointed out; but if the patent is not confined to that particular tool or machine, the use of the others would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result * * * The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

More recently, the Seventh Circuit followed *Cochrane*, in Binks Mfg. Co. v. Ransburg Electro Coating Corp., 281 F. 2d 252, 258 (7th Cir. 1960):

"The fact that there are structural differences between plaintiff's [apparatus * * *] and the heads specifically shown in the patents in suit is without significance in respect to infringement of the method patent. Infringement of a method patent is not dependent on the form of apparatus used. Cochrane v. Deener, * * *."

And, in Sbicca-Del Mac, Inc. v. Milius Shoe Co., 145 F.2d 389, 397 (8th Cir. 1944), the same rule was followed:

"If infringement could be avoided by using a machine instead of a hand tool a method patent would be of little value."

Nor is it significant that defendant uses numerals as identifying symbols, rather than a short vertical line, which is the preferred embodiment. It is conceivable that defendant's result could be construed as minor improvement, because it

tells the reader upon which proof the correction was made. Significantly, defendant does not urge that argument, preferring instead to merely indicate the distinction between the two processes.[5] But it is a distinction without a legal difference, for the accused process reads on all aspects of the claims in issue, and achieves substantially the same result in substantially the same way as the patented process. The identifying symbol has been shown to be "readily removable" by means of both hand tools and power tools. In our judgment, the accused process achieves a real identity of means, operation and result. King-Seeley Thermos Co. v. Tastee-Freez Industries, 357 F.2d 875 (7th Cir. 1966); North Star Ice Equipment Co. v. Akshun Mfg. Co., 301 F.2d 882 (7th Cir. 1962). We believe the arguments advanced by defendant have no merit, and that the accused process infringes the process claims 1–3 of the patent in suit.

Even were there not literal infringement here, which we believe obtains, infringement would not be avoided by the slight distinctions indicated in the accused process. The doctrine of equivalents would still dictate a finding of infringement. First applied in Winans v. Denmead, 15 How. 330, 14 L.Ed. 717, the theory is that "if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935. As later stated in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607–608, 70 S.Ct. 854, 855, 856, 94 L.Ed. 1097 (1950):

"In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it.

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system.

"The doctrine of equivalents evolved in response to this experience. * * *"

See John Wood Co. v. Metal Coating Corp., 238 F.Supp. 777 (N.D.Ill.1965); Ortman v. Maas, 157 U.S.P.Q. 1 (7th Cir. 1968).

Although the application of this doctrine requires a determination of fact, the facts in this case are not in dispute, only the legal interpretations to be accorded those facts are in dispute. The Court has had the benefit of all relevant physical and documentary evidence, and the affidavits of the principal agents of plaintiff

---

5. Defendant presumably does not urge that argument because an improver cannot appropriate the basic patent of another, improve it, and thereby avoid infringement. Chicago Patent Corp. v. Genco, Inc., 124 F.2d 725 (7th Cir. 1942); Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963); Neff Instrument Corp. v. Cohu Electronics Inc., 298 F.2d 82 (9th Cir. 1961). Defendant, therefore, is obliged to argue that its process is different in concept from the patented process, and does not read on the claims in issue.

and defendant. There can be no room for dispute on this record that the accused process employs such similar means to a similar result, that it has paid the plaintiff's invention "the tribute of its imitation." That conclusion is additionally supported by the fact that defendant had no commercially feasible method for readily identifying corrected lines, prior to its use of the accused process, which admittedly was subsequent to the development of the patented process.

■ As above stated, we do not believe the use of a router, and the employment of sequential numerals in defendant's process are sufficient to take it out of the precise language of the claims in issue. Even if the accused process did not precisely read on the claims, the slight distinctions are equivalent to the comparable steps in plaintiff's invention, and infringement would be made out under the doctrine of equivalents.

There remaining no genuine issue of material fact as to infringement, plaintiff's cross-motion for summary judgment on that issue is sustained. The issue of validity remains for trial.