**KING–SEELEY THERMOS CO.,**
**Plaintiff,**

v.

**REYNOLDS PRODUCTS, INC.,**
**Defendant.**

No. 66 C 1389.

United States District Court,
N. D. Illinois, E. D.

Sept. 25, 1970.

William R. McNair, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., Don K. Harness, Cyrus Minkler, Harness, Dickey & Pierce, Detroit, Mich., for plaintiff.

Ronald A. Sandler, Curtis F. Prangley, Mark H. Clayton, Prangley, Clayton, Mullin, Dithmar & Vogel, Chicago, Ill., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NAPOLI, District Judge.

This cause coming on for trial, the Court having heard the evidence, having considered the memoranda of counsel for the parties and being fully advised in the premises, now finds:

This is an action for patent infringement by King-Seeley Thermos Co., Plaintiff, against Reynolds Products, Inc., Defendant. Plaintiff is a Delaware corporation having its principal office at Ann Arbor, Michigan, and its Queen Products Division is engaged in the manufacture and sale of flake or chip ice producing machines. Defendant, Reynolds Products, Inc., is an Illinois corporation having its principal office at Rolling Meadows, Illinois, and is engaged in the business of manufacturing chip or chunk ice producing machines. Plaintiff charges that Defendant's ice making machines Models 200, 300, 400 and 500 series infringe claim 5 of United States Letters Patent No. 2,753,694 (hereinafter referred to as "the '694 patent"), and claim 9 of United States Letters Patent No. 3,034,311 (hereinafter referred to as "the '311 patent").

Defendant for its answer denied infringement of the patent claims in suit and alleges that the patent claims in suit are invalid on several grounds. Defendant also alleges that Plaintiff is guilty of "unclean hands" and should be precluded from enforcing its rights in the '694 patent because of certain false representations or misrepresentations made in prior litigation involving the '694 patent.

Claim 5 of the '694 patent reads as follows:

"5. An ice chip producing machine comprising an elongated freezing chamber having an open end, means

for supplying water to the inside of said freezing chamber,

means for cooling at least a portion of said freezing chamber to freeze ice on the inside surface thereof,

an ice conveying auger rotatably mounted in the freezing chamber with its spiral edge disposed in closely spaced relation to the inside wall of said chamber,

means for constantly rotating the auger to cause said spiral edge to shear off ice frozen on the inside wall of the chamber constantly to deliver ice to said open end of the freezing chamber,

and an ice disintegrating and removing member having a beveled ice engaging surface with the lower end of said surface being disposed substantially adjacent to the end of said auger and said lower end of the beveled portion being constituted as a narrow splitting element extending generally outwardly of the axis of rotation of the auger, said disintegrating and removing member serving to break up said ice and discharge the same with rotation of the auger."

Claim 9 of the '311 patent reads as follows:

"9. In an ice making machine comprising a

cylindrical freezing chamber,

means for cooling the freezing chamber,

means for supplying water to the freezing chamber,

means for including a spiral flight for advancing ice axially of the chamber,

the improvement comprising closure means for the end of the chamber towards which the ice is advanced defining substantially axially extending aperture means for effecting concomitant compression and axial discharge of ice outwardly of the freezing chamber,

the aperture means defined by said closure means being generally axially aligned with the freezing chamber and

having a radial cross-sectional area relatively smaller than the radial cross-sectional area of the freezing chamber adjacent the terminal end of the flight to effect compression of the ice upon movement thereof axially of said closure member."

## FINDINGS OF FACT

1. This action was filed on July 27, 1966 against Defendant charging infringement of the '694 patent and the '311 patent. Prior to trial it was stipulated that only claim 5 of the '694 patent and claim 9 of the '311 patent would be litigated.

2. The '694 patent was duly and legally issued to Plaintiff's predecessor, Queen Stove Works, Inc., on July 10, 1956 as the assignee of Fay A. Trow and Marcus Nelson, applicants of patent application Serial No. 310,016 filed in the United States Patent Office on September 17, 1952. Plaintiff is the owner of the '694 patent and entitled to bring this action for its infringement and to all rights of recovery for infringement thereof. Plaintiff and its predecessor are hereinafter referred to as "Plaintiff".

3. The '311 patent was duly and legally issued to Plaintiff on May 15, 1962 as the assignee of Marcus Nelson, applicant of patent application Serial No. 81,761 filed in the United States Patent Office on January 10, 1961, as a continuation-in-part of applicant's patent application Serial No. 697,681 filed November 20, 1957. Plaintiff is the owner of the '311 patent and is entitled to bring this action for its infringement and to all rights of recovery for infringement thereof.

4. Defendant is an Illinois corporation having its principal place of business in Rolling Meadows, Illinois, and has manufactured and/or sold within this district and within the six years next preceding the filing of the complaint, ice making machines which are identified as its Models 200, 300, 400 and 500 series machines. All of these machines

manufactured and/or sold by Defendant are charged by Plaintiff to infringe claim 5 of the '694 patent and claim 9 of the '311 patent. Plaintiff on June 13, 1963, gave Defendant written notice of its claim of infringement of the '694 and '311 patents on account of the manufacture, use and/or sale by Defendant of ice making machines.

5. For the purpose of determining whether or not claim 5 of the '694 patent and claim 9 of the '311 patent are infringed by Defendant's various ice making machines, it has been stipulated by the parties that all of Defendant's 200 series machines, except for the first 552 of such machines, 300 series machines, 400 series machines and 500 series machines, except for 138 of such latter machines, can be considered by the Court as having the same construction. The first 552 of the 200 series machines of Defendant differ from the remaining machines insofar as the configuration of the extruding heads and cutters used therein are concerned. The 138 series 500 machines of Defendant differ from the remaining 500 series machines insofar as the dimensions of the root diameter of the auger used in such machines is concerned.

6. Flake, chip or chunk ice made by machines involved in this litigation is individual, relatively small pieces of ice which will not weld or mat together when stored in a storage bin and which can be easily scooped, handled, molded and pyramided and can be produced at relatively low cost. Due to its method of manufacture such ice is not completely dry and free of water as is cube ice which because of its method of manufacture is solidly frozen and contains no water.

7. In 1951 Plaintiff was manufacturing and selling machines for producing ice cubes and it was aware of a demand and need by its customers for relatively inexpensive machines which could manufacture low cost flake, chip or crushed ice on the premises of the customer. At that time a machine developed by Messrs. Nitsch and Hamner was sub-

mitted to Plaintiff as a salable flake ice making machine. This machine is generally depicted in United States Letters Patent No. 2,597,515 which issued to Nitsch on his foregoing machine. The Nitsch machine which was sent to Plaintiff had a triangular shape metal splitter finger mounted thereon outside of the freezing cylinder and above the auger flight which is not shown in the Nitsch patent. The splitter finger was put on the machine to cause ice conveyed from the cylinder to fall off the machine without being subjected to any compression or restriction and there was no difference in the quality of ice made in the Nitsch machine with or without the splitter finger.

8. Plaintiff's engineers experimented with the Nitsch machine in an effort to produce satisfactory flake ice but could not do so under varying conditions to which such machines would be subjected in use throughout the country. If Plaintiff attempted to get satisfactory hard ice from the Nitsch-Hamner machine the machine froze up and became inoperative and then if an adjustment was made in the machine to try to prevent such freeze ups the ice became slushy and unusable. The Nitsch machine was therefore not a machine which produced commercially acceptable or usable flake ice and it was not until the development of the '694 patent machines having a breaker head in the freezing chamber disclosed in the '694 patent that Plaintiff was able to produce commercially usable and salable flake ice in a cylinder and auger type ice making machine.

9. Both Plaintiff's patented commercial ice making machines and Defendant's accused commercial ice making machines were operated and made ice in courtroom demonstrations. These demonstrations clearly established that Plaintiff's and Defendant's commercial machines with a breaker head in the freezing cylinder produced commercially satisfactory ice which would not weld together in a storage bin while the same machines operated without a breaker

head, and thus similar to the Nitsch machine, made ice which would not be commercially satisfactory flake, chip or chunk ice.

10. Plaintiff's machines covered by the '694 patent have been highly successful and produce commercially usable and acceptable flake ice at a cost of less than one tenth the cost of crushed ice purchased from commercial ice companies. During the period June 1952 through the year 1968, Plaintiff has sold over 210,000 devices covered by claim 5 of the '694 patent having a sales value of approximately $102,000,000.00.

11. The early '694 patent machines manufactured and sold by Plaintiff were plagued with early production difficulties and many parts of these machines were not strong enough to work properly under field operating conditions. Plaintiff subsequently modified its machines to make them structurally stronger and increased their efficiency by modifying the size of the freezing cylinder discharge opening, the configuration of the breaker head in the cylinder and otherwise improving the machines. All of these machines did employ a breaker head in the upper end of the freezing cylinder.

12. It is the combination covered by the claims of the '694 patent and characterized by obstructing and deflecting surfaces in the open end of the freezing cylinder adjacent the upper end of the auger flight against which the slushy column of ice is conveyed by the rotating auger so that a rising column of soft or slush ice is compressed, dewatered and broken up or disintegrated into chips which are discharged from the cylinder which distinguishes it from the Nitsch patent and Nitsch machine and which has made Plaintiff's patented machine successful. This combination would not have been obvious to a person having ordinary skill in the ice making art in 1951 when the invention covered by the '694 patent was made, and is a new combination of elements which cooperate together in a new modus operandi to produce new, different and unobvious results.

13. The Nitsch patent and machine are the most pertinent prior art relied on by Defendant in its effort to invalidate claim 5 of the '694 patent. The Nitsch patent was considered by the Patent Office before it issued the '694 patent and the Nitsch patent and machine have been considered by prior courts in litigation involving the '694 patent, including the Tenth Circuit Court of Appeals in the case of King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc. et al., reported at 354 F.2d 533; by the Seventh Circuit Court of Appeals in the case of King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., reported at 357 F.2d 875; by the United States District Court for the Northern District of Illinois in King-Seeley Corp. v. Cold Corporation of America, reported at 182 F.Supp. 768; by the United States District Court for the District of Colorado in the case of King-Seeley Thermos Co. v. Ice-O-Matic, Inc., et al. in an unreported decision, copy of the Findings of Fact and Conclusions of Law of which is in evidence in this matter. The Patent Office and the Courts have found claims of the '694 patent to be patentable and valid over the Nitsch patent and other prior art.

14. Claim 5 of the '694 patent when read and interpreted in light of and with reference to the specification and drawings of this patent, implicitly requires the breaker head to be disposed in the open end of the freezing cylinder with its lower end substantially adjacent the upper end of the auger flight. Claim 5 is not invalid for failure to comply with the provisions of 35 U.S.C. § 112.

15. Defendant has not met its burden of establishing invalidity of claim 5 of the '694 patent by clear and convincing evidence.

16. Defendant did not start to manufacture and sell any of its accused machines until several years after Plaintiff's patented machines were on the

market and had been commercially successful.

17. Both Plaintiff's patented machines and Defendant's accused machines make ice in substantially the same way, namely by freezing ice on the inside wall of the cylinder, scraping the ice from the wall of the cylinder and conveying it upwardly by an auger against breaker or extruder head surfaces disposed in the upper end of the cylinder so that the ice is compacted, broken up and discharged as discrete pieces which will not mat or stick together in a storage bin.

18. Demonstrations of Defendant's accused machines and of Plaintiff's patented machines along with testimony relative thereto clearly established that all of these machines make satisfactory and competitive ice which will not mat together in the storage bin. Defendant's accused machines have all the elements called for in claim 5 including a beveled ice engaging surface having a lower end disposed substantially adjacent the upper end of the auger flight which acts as a splitting element to split the rising column of ice being conveyed upwardly by the auger.

19. The ice made in Defendant's accused machines and in Plaintiff's patented machines vary from each other only in minor degrees of dryness, size and shape and the shape and dryness of the ice made in Defendant's machines may be varied by moving the breaker or extruder head up or down in the upper end of the freezing cylinder. Defendant has chosen a particular location for its breaker or extruder head to produce ice which is of a size and dryness so as to work well in its particular ice dispensing mechanism and this is a matter of choice and degree and does not avoid infringement of claim 5 of the '694 patent.

20. There is no file wrapper estoppel that prevents claim 5 of the '694 patent from being infringed by Defendant's accused machines and Plaintiff's subsequently issued patent No. 2,825,209 does not limit the scope of claim 5 of the '694 patent in suit so that Defendant's accused machines avoid infringement thereof.

21. Claim 5 of the '694 patent is infringed by all of Defendant's accused ice making machines, namely its Models 200, 300, 400 and 500 series machines. The first 552 of the series 200 machines and the 138 of Defendant's series 500 machines which differ slightly from the other accused machines do not avoid infringement as a result of any differences in structure or mode of operation from the other machines.

22. Plaintiff's flake ice making machine disclosed in the '311 patent in suit was developed as an improvement over the machine shown in the '694 patent to permit larger quantities of ice to be manufactured in an inexpensive manner. Such machines include a breaker plate or head in the open end of the freezing cylinder having passageways or openings through which the rising column of slush ice is forced by the auger so as to compress the ice, dewater it and break it up and axially discharge the same as chips or chunks. Claim 9 of the '311 patent has been previously held valid by the Tenth Circuit Court of Appeals in the case of King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc. et al., 354 F.2d 533 and by the United States District Court for the District of Colorado in the case of King-Seeley Thermos Co. v. Ice-O-Matic, Inc. et al. (unreported).

23. The original patent application Serial No. 697,681 filed November 20, 1957 on which the '311 patent is based, discloses all of the structure called for in claim 9 of the '311 patent and the effective filing date of claim 9 of the '311 patent is November 20, 1957. The United States Patent Office determined this when it issued the '311 patent containing claim 9 and its determination was not erroneous. Therefore, United States Letters Patent No. 2,962,878 (patent application for which was filed in 1959) and Plaintiff's sales of its Model SF–5 and Model SF–8 machines in 1958 do not constitute prior art which can affect the

validity of claim 9 of the '311 patent. United States Patent No. 2,962,878 was considered by the Patent Office before it issued the '311 patent.

24. Defendant has relied on the following prior art patents as invalidating claim 9 of the '311 patent:

1. United States Patent No. 1,020,759 dated March 19, 1912;

2. United States Patent No. 2,825,209 dated March 4, 1958;

3. United States Patent No. 2,962,877 dated December 6, 1960;

4. British Patent No. 409,499 dated May 3, 1934;

5. German Patent No. 1,009,646 dated June 6, 1957;

6. Japanese Patent No. 133,143 dated June 24, 1939.

None of these prior art patents disclose the combination of elements defined by claim 9 to manufacture ice in the manner defined by this claim and the Patent Office considered patents 2, 3 and 5 above before it issued the '311 patent.

25. The combination as set forth in claim 9 of the '311 patent would not have been obvious to a person having ordinary skill in the ice making art in 1957 when the invention defined in the claims of the '311 patent was made and it defines a new combination of elements which cooperate together in a new modus operandi to produce new, different and unobvious results over the prior art.

26. Claim 9 of the '311 patent is not invalid for failure of the applicant to file a supplemental oath in the Patent Office when claim 9 was added to the patent application which resulted in the '311 patent. While claim 9 differs somewhat from the claims originally presented to the Patent Office, the subject matter of this claim is not sufficiently different from that of the original claims so as to require a supplemental oath as provided in Rule 67 of the Patent Office Rules of Practice. Furthermore, the Patent Office issued the '311 patent without requiring that any such oath be filed and it was not in error in so doing.

27. Claim 9 does point out and distinctively claim the invention disclosed in the '311 patent in that substantially concomitant compression and axial discharge of ice occurs when the slush ice is moved by the auger into engagement with the breaker head and through apertures therein which have a smaller radial cross sectional area than the radial cross sectional area of the freezing chamber below the breaker head and adjacent the terminal end of the auger flight. Claim 9 is not invalid under the provision of 35 U.S.C. § 112.

28. A sketch of one George Hamner which was allegedly mailed to Plaintiff's predecessor was never seen by Marcus Nelson, the inventor of the subject matter of the '311 patent prior to the time he made the invention of such patent and there is no evidence that this sketch was ever published, that knowledge of the device shown in the sketch was accessible to the public, or that any machine shown therein was ever manufactured prior to the invention of the '311 patent. Therefore such sketch does not invalidate claim 9 of the '311 patent. The reduction to practice by Nelson of his own invention does not inure to the benefit of Hamner and Hamner is not a prior inventor of the subject matter of claim 9 of the '311 patent.

29. Defendant has not met its burden of establishing invalidity of claim 9 of the '311 patent by clear and convincing evidence.

30. Defendant's accused ice making machines include all of the structural elements called for in claim 9 of the '311 patent and operate in substantially the same way to produce substantially the same type of ice as the machine of the '311 patent. Defendant's accused machines effect concomitant compression and axial discharge of ice in substantially the same manner as the machine of the '311 patent and Defendant's accused machines have closure means which provide restricted passageways therein through which ice is conveyed in the manner defined in claim 9 of the '311 patent. The relationship between

the areas of the passageways of the closure means of Defendant's accused machines and the area of the freezing chamber adjacent the terminal end of the flight responds to the definition set forth in claim 9 of the '311 patent.

31. Claim 9 of the '311 patent is infringed by all of Defendant's accused ice making machines, namely its Models 200, 300, 400 and 500 series machines. The first 552 of the series 200 machines and the 138 of Defendant's series 500 machines which differ slightly from the other accused machines do not avoid infringement as a result of any differences in structure or mode of operation from the other machines.

32. Defendant has not established that Plaintiff has made any misrepresentations or false representations in any prior litigation that would preclude it from enforcing its rights in the patents in suit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties hereto and of the subject matter of this litigation.

2. Patents are presumed to be valid and the party asserting invalidity has a heavy burden of establishing invalidity by clear and convincing evidence. 35 U.S.C.A. Section 282, Devex Corporation v. General Motors Corp., CA 7, 321 F.2d 234, 238; King-Seeley Thermos Co., v. Tastee Freez Industries, Inc., CA 7, 357 F.2d 875, 879.

3. A need in the marketplace for a patented product coupled with the commercial success of that patented product while not decisive in determining the question of validity and invalidity, are objective factors showing invention and lack of obviousness and materially strengthen the presumption of validity of the patent. P & D Sales & Mfg. Co. v. Winter, CA 7, 334 F.2d 830, 835; H. W. Gossard Co. v. J. C. Penney Co., CA 7, 304 F.2d 515, 517; England v. Deere & Co., CA 7, 284 F.2d 460, 463.

4. The rulings of prior courts that patents are valid over the prior art at their very least strengthen the presumption of validity of the patents and should be honored unless new evidence is presented which would have induced a different result than in the prior cases. Hunt et al. v. Armour & Co., D.C.N.D.Ill.E.D., 90 F.Supp. 767 affirmed CA 7, 185 F.2d 722; Georgia-Pacific Corp. v. United States Plywood Corp., CA 2, 258 F.2d 124; Koolvent Metal Awning Corp. of America et al. v. Graham et al., D.C.N.D.Ohio E.D., 82 F. Supp. 40.

5. The presumption of validity of a patent is strengthened when the U. S. Patent Office has considered the most pertinent prior art before issuing the patent. Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., CA 7, 298 F.2d 765, 768; AMP Inc. v. Vaco Products Co., CA 7, 280 F.2d 518, 521.

6. Patent claims should be interpreted and construed so as to uphold and preserve the inventor's rights and not destroy them. Apex Electrical Mfg. Co. v. Maytag Co. et al., CA 7, 122 F.2d 182; Adler Enterprises, Inc. v. Carson, Pirie, Scott & Co., D.C.N.D.Ill.E.D., 218 F.Supp. 325; Holstensson v. Webcor, Inc., D.C.N.D.Ill.E.D., 150 F.Supp. 441.

7. Patent claims are to be construed liberally, particularly when the patented invention has had significant commercial success or the patent is of the pioneer type. Hunt et al. v. Armour & Co., CA 7, 185 F.2d 722; Chicago Patent Corp. v. Genco, Inc., CA 7, 124 F.2d 725; Armstrong v. Motorola, Inc., D.C. N.D.Ill.E.D., 230 F.Supp. 337.

8. Patent claims are to be read and interpreted in the light of the specification and drawings of the patent to ascertain the invention. United States v. Adams, 383 U.S. 39, 48–49, 86 S.Ct. 708, 15 L.Ed.2d 572; Ortman v. Maass, CA 7, 391 F.2d 677, 680.

9. Claim 5 of the '694 patent and claim 9 of the '311 patent are valid and enforceable against Defendant.

10. Patents are not limited to the embodiment of the invention described in the specification since the patent claims measure the invention. If the accused device achieves substantially the same results in substantially the same way as the patented device, the devices are the same in the eyes of the patent law. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097; King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., CA 7, 357 F.2d 875, 880.

11. One appropriating the principle and mode of operation of a patented device, and obtaining its results by the same or equivalent means, may not avoid infringement by making a device different in form, even though it be more or less efficient than the patented device. Paper Converting Machine Co. v. FMC Corp., CA 7 (1969), 409 F.2d 344, 353; Nordberg Mfg. Co. v. Woolery Machine Co., CA 7 (1935), 79 F.2d 685, 692; Weller Mfg. Co. v. Wen Products, Inc. et al., D.C.N.D.Ill.E.D. (1954), 121 F.Supp. 198.

12. The addition of an added element to a combination called for by a patent does not avoid infringement of the patent. Holland Co. v. American Steel Foundries, CA 7, 190 F.2d 37; Columbia Wire Co. v. Kokomo Steel & Wire Co., CA 7, 143 F. 116.

13. In determining matters such as whether or not a patent claim is supported by the specification and drawings of the patent and whether or not a patent claim is sufficiently different from claims originally filed in the Patent Office so as to require a supplemental oath by the inventor, the expertise of the Patent Office Examiners is given great weight and should not be overruled by courts except when clearly erroneous. Helms Products, Inc. v. Lake Shore Mfg. Co., Inc., CA 7, 227 F.2d 677; Aerosol Research Co. v. Scovill Mfg. Co., CA 7, 334 F.2d 751; Technicon Instruments Corp. v. Coleman Instruments Corp., CA 7, 385 F.2d 391.

14. Novelty of a machine is not negatived by any prior unpublished drawing no matter how completely it may exhibit the patented invention and prior knowledge or use in order to be usable to invalidate a patent must be accessible to the public. Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., CA 7, 298 F.2d 36; Warren Bros. v. City of Owosso, CA 6, 166 F. 309; Stearns v. Tinker & Rasor, CA 9, 220 F.2d 49, 56.

15. An injunction shall be issued against further infringement by Defendant of claim 5 of the '694 patent and claim 9 of the '311 patent.

16. An accounting shall be had and Plaintiff shall be awarded its damages as so determined arising out of infringement by Defendant of claim 5 of the '694 patent and claim 9 of the '311 patent.

17. Plaintiff shall be awarded its taxable costs.

## JUDGMENT AND DECREE

This cause having been heard by the Court, and the Court having considered the pleadings, the testimony of the witnesses for the respective parties, the exhibits received in evidence, and the Court having observed the operation of the subject matter of this cause, and being fully advised in the premises and having made its findings of fact and conclusions of law,

It is hereby ordered, adjudged and decreed:

1. This Court has jurisdiction over the parties hereto and over the subject matter of this action.

2. Plaintiff, King-Seeley Thermos Co., is the owner of patents Nos. 2,753,694 and 3,034,311 and all claims for infringement thereof.

3. Said patent No. 2,753,694, and particularly, claim 5 thereof, and said patent No. 3,034,311, and particularly, claim 9 thereof, are valid.

4. Defendant, Reynolds Products, Inc., has infringed claim 5 of said patent No. 2,753,694, and claim 9 of said patent No.

3,034,311, by making, using and selling its models Nos. 200, 300, 400, and 500 series of ice making machines.

5. Plaintiff shall recover its just damages and costs on account of the Defendant's infringement and an accounting is hereby ordered to establish such damages.

6. An injunction shall issue out of and under the seal of this Court, pursuant to the Bill of Complaint herein, directed to the Defendant, permanently enjoining the Defendant, its servants, agents and employees, and those in active concert and in participation with it, and each and every one of them from directly and indirectly making, using or selling, without the consent, license or authority of Plaintiff, King-Seeley Thermos Co., its models Nos. 200, 300, 400, and 500 flake ice making machines and any other devices covered by claim 5 of U. S. Patent No. 2,753,694 and claim 9 of U. S. Patent No. 3,034,311, or in any way violating the rights of Plaintiff under said patents.

7. Defendant's, Reynolds Products, Inc., counterclaim herein shall be dismissed with prejudice.