Per Curiam :*
This is a patent suit under the provisions of 28 U.S.C. § 1498 for the alleged unauthorized use and manufacture by *326 and for tbe U.S. Government of a patented invention. It is found that tbe claimed invention has not been used by the defendant.
The subject matter of this case concerns the aircraft control means disclosed and claimed in claim 2 of U.S. Letters Patent 2,557,829, granted J une 19,1951, to Thomas B. Lavelle on an application for patent filed November 7, 1947. The plaintiff is the sole owner of the entire right, title, and interest in said Letters Patent 2,557,829, the written assignment having been duly recorded in the U.S. Patent Office on November 13,1959. The patent disclosure and the patent claim in suit are described in detail in the accompanying findings of fact.
The present suit is based on alleged use of the invention claimed in plaintiff’s patent in the lateral control systems of the A3 J and A5C aircrafts, procured by the defendant during the 6-year period preceding the filing of plaintiff’s petition. The A3J aircraft was the predecessor model to the A5C aircraft. The parties have agreed that, for purposes of this suit, the lateral control systems of the two models are substantially identical.
Defendant has raised a number of defenses to the charge of unauthorized use including allegations that the patent claim in suit is invalid in view of the prior art, that the patent claim is not supported by an adequate disclosure and is indefinite, and that even if the patent claim is valid the accused aircraft do not infringe the claim in suit.
In urging invalidity as a defense, defendant has referred to numerous prior patents and publications as showing the crowded state of the art at the time of filing of the application for the patent in suit. The defendant has specifically relied upon four prior patents and one prior publication as anticipatory of the patent claim in suit. These prior items are identified in finding 20.
The patent claim in suit is set out in full in finding 12 and defines in detail an aircraft wing structure having an inclined slot adapted to be covered at the top by a pivoted surface called a spoiler and a pivoted surface at the bottom called a scoop, and having means for moving the spoiler and the. scoop to different but related positions.
*327 The only issue we decide is the breadth or scope to be accorded the claim in. suit. Specifically, this claim (claim 21) recites means for moving the spoiler and scoop to “different but related positions.” In the accused lateral control system the spoiler is differentially opened relative to the scoop through an angular ratio of approximately 2 to 1. The plaintiff alleges that claim 2 must be read to include the differential operation of the spoiler and scoop of the accused structure. The patent in suit is not for a pioneer type invention but, rather, is located in a crowded art. Such patents, in general, are not construed broadly but with careful attention to the specifications, prior art, and other relevant factors. See Dominion Magnesium Ltd. v. United States, 162 Ct. Cl. 240, 246-47, 249-50, 320 F. 2d 388, 392, 394 (1963). Here, the prior art discloses patents and publications using (i) some combination of scoop, slot, and spoiler, and (ii) at least some differential movements between various elements of an airfoil, including certain different but related movements between a scoop and spoiler. Against this background, the term “different but related positions” in claim 2, if the claim were to be held valid, would normally not be read generously but narrowly. Moreover, the specifications of patent ’829 here in suit — “it is fundamental that claims are to be construed in the light of the specifications * * *” (United States v. Adams, 383 U.S. 39, 49 (1966))—emphasize, not the general phrase “different but related positions”, but a particular differential operation by which the lower scoop operates initially before, prior to, or more rapidly than the upper spoiler. See findings 7-10. It is clear that the accused structures do not operate in that way.
Finally, it is significant that the patentee found it necessary during prosecution of the application for the patent in suit to rely heavily on certain interpretations given to specific language in the claim in order to obtain allowance thereof. The specific arguments and interpretations relied upon by the patentee are described in detail in finding 11. They show the claim as involving the more rapid opening of the scoop than the rise of the spoiler (a method not used by defendant’s system).
*328 For purposes of determining whether or not an accused structure infringes a claim, the claim must be interpreted not only in light of the specification but also with reference to the statements made to secure the allowance of patent claims. Graham v. John Deere Co., 383 U.S. 1, 33 (1966); Kuhne Identification Systems, Inc. v. United States, 82 Ct. Cl. 237, 259 (1936); Signal Mfg. Co. v. General Electric Co., 217 F. Supp. 734, 736 (D. Mass., 1963); Baldwin-Lima-Hamilton Corp. v. Tatnall Measuring Systems Co., 169 F. Supp. 1 (E.D. Pa., 1958), aff'd per curiam, 268 F. 2d 395 (C.A. 3, 1959), cert. denied, 361 U.S. 894 (1959). This is particularly true in order to determine the interpretation placed on the claim language by the patentee himself. Jones v. United States, 120 Ct. Cl. 747, 788-89, 100 F. Supp. 628, 652-53 (1951). The patentee filed at the request of the Patent Office a sworn statement in the form of an affidavit, discussed in finding 11, to substantiate the arguments and statements made to the examiner. The patentee’s actions and arguments before the Patent Office must be carefully considered and, under these circumstances, require a narrow construction of the claim. See Great Lakes Carbon Corp. v. Continental Oil Co., 219 F. Supp. 468, 481 (W.D. La. 1963). [1]
In view of the limitations required by the prior art, the specification, and the applicant’s statements before the Patent Office, it is concluded that claim 2 has not been infringed by the lateral control system of the defendant’s A3J aircraft. Accordingly, we find it unnecessary to consider the validity or invalidity of claim 2.
The plaintiff is not entitled to recover and its petition is dismissed.
*329 Fim>TNGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Donald E. Lane, and the briefs and arguments of counsel, makes findings of fact as follows:
1. This is a patent suit arising under the provisions of 28 U.S.C. § 1498 for reasonable and entire compensation for unlicensed use of an invention described and claimed in IT.S. Letters Patent No. 2,557,829 entitled “Aircraft Control Means,” issued June 19, 1951, to Thomas B. Lavelle on an application filed November 7, 1947. The plaintiff, Lavelle Aircraft Corporation, is a corporation organized and existing under the laws of Pennsylvania and doing business in Newton, Bucks County, Pennsylvania.
2. Plaintiff became the record owner of the entire right, title and interest in and to U.S. Letters Patent No. 2,557,829 on November 10,1959, and such entire right, title and interest have been vested in plaintiff at least from November 10,1959, up to April 23,1960, the date the petition herein was filed.
3. Counsel for the parties agreed, at pretrial, that the issues of validity and infringement of the Lavelle patent be first determined upon full proofs, findings of fact and argument of counsel, and that the accounting issue be deferred until after the entry of the order of the court on the issues of validity and infringement.
4. Defendant has admitted procurement within the 6 years preceding the filing of this petition of one or more A3J or A5C aircraft, each of which includes a lateral control system shown in various sections in North American Aviation drawings Nos. 247-52013 (sheets 1 and 2) and 247-16150, plaintiff’s exhibits Nos. 12-A, 12-B, and 12-C, respectively, incorporated herein by reference only. The A3J and A5C lateral control systems are alleged by plaintiff to infringe claim 2 of the patent in suit. The parties have agreed that for purposes of this suit, the accused lateral control systems of the A3J and A5C aircraft are substantially identical.
5. The Lavelle patent in suit discloses an aircraft lateral control means for controlling the rolling movement of an aircraft about its longitudinal axis. Essentially, the Lavelle *330 control means comprises an assembly located in each, airfoil of an aircraft at a position other than the leading or trailing edge of the airfoil. Each assembly includes a rearwardly inclined slot extending through the airfoil from the lower to the upper surface thereof, an upper spoiler adjacent the upper surface of the wing and pivotally movable about a line to the front of the slot into and out of the slot covering position, a lower scoop adjacent the lower surface of the wing and pivotally movable about a line to the rear of the slot into and out of the slot covering position, and means to effect a differential opening movement between the spoiler and the scoop wherein the initial opening of the scoop takes place prior to or is more rapid than the opening of the upper spoiler while continued actuation causes the spoiler to open more rapidly than the scoop.
6. The patentee acknowledges in the ’829 patent specification that aircraft control systems utilizing wing slots were known in the art prior to his invention wherein the opening of the slot is controlled by means of coacting upper spoilers and lower air scoops which serve to direct air through the slot. This was the subject of Lavelle’s earlier U.S. Letters Patent No. 1,902,133. The patentee further states that such prior constructions have been unsatisfactory because they fail to overcome the problems of lag in response of the aircraft to movement of the control elements and produce a tendency for the airfoil to rise slightly upon actuation of the control elements before the airfoil starts to descend.
7. The general purpose of plaintiff’s ’829 patent is to overcome problems previously encountered in aircraft lateral control systems; namely, a lag in the response of the aircraft to movement of its control members and a tendency for the airfoil to rise slightly before it starts to descend. The specific objects of the invention set forth by the patentee in the ’829 patent specification are in part as follows:
My invention overcomes these objections by providing wing slots with upper spoilers and lower scoops, together with mechanism for controlling movement of the spoilers and scoops ,in a novel manner which serves to overcome the lag heretofore encountered in such systems. This result is preferably effected by providing means for *331 producing a flow of air through the slot before the spoiler is raised to an aerodynamically effective position. In the construction here shown and described this result is attained by a differential in operation of the lower scoop and upper spoiler whereby the initial opening of the scoop may take place prior to or is more rapid than the opening of the upper spoiler. * * *
*****
A further object of my invention is to provide means for producing a flow of air through a slot prior to aerodynamically effective operation of a spoiler associated with the slot.
*****
A further object of my invention is to provide means for moving the lower scoop into a slot opening position prior to effective opening of the upper spoiler.
8. The ’829 patent, of which figs. 1, 2 and 5 of the drawing are reproduced herein, describes the structure disclosed in fig. 2 as follows:
* * * * *
The slots 10 are each provided with closure means at the upper and lower ends of the slot. These closure means are so formed that when closed they present outer surfaces that are flush with the adjacent upper and lower surfaces of the air foil. Thus the closure means for the upper end of slot 10 includes the upper spoiler 14 pivotally mounted at 16 in front of slot 10 and the air deflecting plate 18 pivotally mounted at 20 in the rear edge of the slot. The closure means for the lower end of the slot includes the air deflecting plate 22 pivotally mounted at 24 in front of the slot 10 and the lower air scoop 26 pivotally mounted at 28 in the rear edge of the slot. A slot denning plate 30 is pivotally connected along its upper longitudinal edge to the lower surface of the upper spoiler 14 as shown at 32 and is pivotally connected along its lower longitudinal edge at 34 to the inner surface of the air deflecting plate 22. In a similar way a slot defining plate 36 is pivotally secured along its upper edge to the lower surface of the air deflecting plate 18 as shown at 38 and is pivotally connected to the inner surface of the air scoop 26 at 40.
* * * on pivotal movement of either the upper spoiler or the lower scoop, or when both the spoiler and scoop are moved to project from the adjacent surfaces of the air foil, the slot defining plates 30 and 36 are sep *333 arated or moved apart to define an inclined slot or air passage having a shape in vertical cross section related to the position of the spoiler and scoop. * * *

*332

*333 ❖ ❖ $
In order to move the spoiler and scoop in such a differential and related manner any suitable type of actuating means may be employed. As shown diagrammatically in Fig. 2, the actuating means may embody hydraulically or pneumatically operated pistons 41 and 43 controlled by valve means 45 for effecting the desired differential and sequence in movement of the spoiler and scoop. * * *
9. The patentee has described the operation of the preferred form of his invention in the following language in the ’829 patent specification:
In the preferred form of my invention air is caused to flow through the slot and to the rear of the spoiler before the spoiler is raised sufficiently to become effective. For this purpose the scoop 26 is caused to have an initial opening movement which precedes or exceeds that of the spoiler. The slot is thus opened and air is caused to pass from the lower to the upper surface of the air foil before the spoiler has moved to a position in which it is aerodynamically effective. In this way I overcome the tendency for the air foil to rise slightly before it starts to descend, which is a characteristic that has been noted heretofore in wind tunnel tests on air foils having spoilers and scoops which open simultaneously and through equal angles. After the scoop has opened through a limited angle the spoiler preferably is opened more rapidly than the scoop and if desired the actuating means may be arranged to cause the scoop to close slightly as the spoiler reaches its maximum raised position. * * *
10. Typical relative angular positions of the spoiler and scoop are depicted in the table of fig. 5. The ’829 patent specification describes said table in the following language:
The successive positions of opening of the scoop and spoiler when using a typical adjustment of the linkage or typical hydraulic or other actuating means is indicated in the table of Fig. 5 and is partially shown in dotted lines in Fig. 2. In this table the curves A and B represent one type of relative movement of the scoop and spoiler which may be effected with either mechanical, *334 hydraulic, or other actuating means, while the curves X and Y represent an alternative type of relative movement of the scoop and spoiler which may be employed in accordance with my invention. Referring to curves A and B, curve A indicates the angular position of the scoop as it moves from its closed position toward an open position as the control member is moved to successive control positions. Curve B indicates the corresponding angular positions to which the spoiler is simultaneously moved as the scoop is opened. Similarly curve X represents successive positions of the scoop and curve Y represents successive positions of the spoiler on movement of a control member to successive positions represented by points on the vertical axis in Fig. 5.
In each case initial movement of the control member away from the zero position results in opening of the scoop (curves A and X) through a greater angle than the spoiler. In curves A and B the movement of the control from zero to position 2 causes the scoop to move through an angle of approximately three degrees whereas the spoiler is only raised through two * * *
In the adjustment represented by curves X and Y initial movement of the control member away from its zero position actually tends to close the spoiler whereas the air scoop opens at once. It is not until after the control member has moved beyond position 3 and the scoop has opened about six degrees that the spoiler begins to open. * * *
11. In obtaining the allowance of patent claim 2 which is involved in this suit, applicant advised the Patent Office examiner that applicant had conducted wind tunnel tests and experiments upon his own prior art structure as set forth in Lavelle patent 1,902,133, and that such tests had disclosed a lifting action of the airfoil during the initial stage of opening of the slot and projection of the spoiler and air scoop. The applicant stated that in seeking a solution to the problem of initial lift, he discovered the objectionable initial lift of the airfoil could be overcome provided the air scoop on the lower surface of the airfoil was opened more rapidly, “a second in advance of,” than the rise of the spoiler on the upper surface of the airfoil. He further argued that nothing in the prior art would lead one to expect such differential opening of the *335 spoiler and air scoop to overcome the undesirable initial lift or rise of an airfoil, and that the prior art devices suggest that the lift of the airfoil would be increased upon opening of the slot. The applicant’s statements were supported by an affidavit he filed in the Patent Office.
12. The ’829 patent contains six claims. Plaintiff relies solely upon claim 2 in his allegation of infringement. Claim 2 is set forth below in clauses to facilitate understanding of the invention claimed by the patentee.
Patent Claim 2 of ’829
In an aircraft having an air foil,
(a) means forming a rearwardly inclined slot extending through the air foil from the lower to the upper surface thereof,
(b) an upper spoiler positioned adjacent the upper surface of said air foil and pivotally movable about a line to the front of said slot into and out of a slot covering position,
(c) a lower air scoop positioned adjacent the lower surface of said air foil and pivotally movable about a line to the rear of said slot into and out of a slot covering position, said spoiler and scoop each having an edge movable outwardly from said slot covering position so as to project from the adjacent surface of the air foil in an aerodynam.ically effective position,
(d) and means for moving said spoiler and scoop to different but related positions including a common control member,
(e) and fluid operated means actuated by the control member for moving said spoiler and scoop toward said aerodynamically effective positions.
13. The defendant contends that claim 2 of the patent in suit is invalid on the ground that the claimed invention is anticipated by the prior art. In support of this contention, the defendant has called attention to a large number of patents and publications as representing the state of the art at the time the application for the patent in suit was filed, and specifically to four patents and one publication as anticipating claim 2 in suit. The state of the art patents and publi *336 cations show that the aircraft flight control art is a crowded art in which there are a relatively large number of patents and publications disclosing various combinations of aircraft control elements for effecting lateral control of an aircraft about its longitudinal axis.
14.The following state of the art patents and publications disclose airfoils having rearwardly inclined slots extending through the airfoil from its lower to its upper surface:
Frise_ 1,785,620 1930
Lavelle*_ 1, 902,133 1933
Rose_ 2, 077,071 1937
Nazir_ 2,120,568 1938
NACA Report-. 605 1937
NACA Report**. 706 1945
15.Airfoils having slots formed as the result of movement of an airfoil element to allow an airstream to flow in a rear-wardly inclined direction as it passes through the slot are disclosed in the following state of the art citations:
Page_ 1,422, 616 1922
Gaines_ 1, 881,463 1932
Rose- 2, 003,223 1935
Crouch et al_ 2,066,336 1937
Schweisch- 2,243, 885 1941
NACA Report_ 602 1937
16.Airfoils utilizing the combination of a scoop, slot and spoiler are disclosed in the following prior art patents and publications:
Eaton*_ 1,280,195 1918
Frise_ 1,785,620 1930
Lavelle*_ 1, 902,133 1933
Zaparka_ 2,147,360 1939
Griswold_ 2,261,363 1941
Weyl* (British)_ 510,546 1939
British Report_ 1,251 1929
NACA Report_ 706 1945
Each of these state of the art disclosures teaches using a scoop and spoiler for control purposes, located on the lower and *337 upper surfaces, respectively, of an airfoil. A slot connects the scoop and spoiler and is located between the surfaces of the airfoil.
17.Prior state of the art patents and publications which disclose differential movement between various elements of an airfoil are:
Mummert_ 1,565,097 1925
Zaparka_ 2,147,360 1939
Bolas_ 2,152, 835 1939
Schweisch-2,243, 885 1941
Maxwell*_ 2,381,678 1945
Clauser_ 2,407,401 1946
Stone* (British)_ 518,670 1940
18.Different but related movement between a scoop and spoiler on an airfoil is disclosed in the following prior state of the art references:
Frise_ 1,785,620 1930
Griswold_ 2,261,363 1941
Weyl* (British)_ 510,546 1939
NACA Report_ 706 1945
19.The utilization of hydraulically operated means for actuating control elements associated with an airfoil is disclosed, for example, in the following state of the art patents:
Schweisch_ 2,243, 885 1941
Griswold_ 2, 348,252 1944
Clauser_ 2,407,401 1946
Stone (British)_ 518,670 1940
20.Defendant has contended that claim 2 of the patent in suit is anticipated by each of the following patents and publications:
Eaton_ 1, 280,195 1918
Lavelle_ 1, 902,133 1933
Zaparka_ 2,147, 360 1939
Griswold_ 2,261,363 1941
NACA Report_ 706 1945
Each of these disclosures has an effective date prior to November 7,1947, the earliest invention date that may be accorded *338 the patent in suit. The above-noted Eaton and Lavelle patents were cited by the Patent Office against the application for the patent in suit. The NACA Eeport 706 was printed in 1941, and became available to the public as a printed publication December 19,1945.
21. Eaton patent 1,280,195, issued in 1918, discloses an aircraft controlling device having interconnected shutters that control an air passage to provide means for stabilizing and, in other respects, controlling the aircraft in flight. One of the objects of the Eaton invention is stated as follows:
Among its objects, my invention seeks to provide a very simple arrangement of shutter or valve controlled air passages elongated in parallelism with the front edge of the plane or planes, shutter or valve devices therefor and shutter control mechanism operable by the aviator for effecting such relative opening and closing adjustments of the shutters on both sides, whereby to release the under side pressure and take care of the rarefaction that occurs on the top surface, as the conditions may make necessary.
Patent counsel for Lavelle in his response to a rejection by the Patent Office argued that the Eaton patent did not teach differential opening of the scoop relative to the spoiler.
22. Lavelle patent 1,902,133, issued in 1933, relates to a lateral control device comprising a scoop, a rearwardly inclined slot and a spoiler wherein the scoop is rotatably connected to the rear of the slot and the spoiler is rotatably connected to the front of the slot substantially the same as the patent in suit. The defendant has contended that it would have been obvious to slightly move the hinge points of the Lavelle ’133 patent to produce different but related movement between the scoop and spoiler in view of the prior art.
23. Zaparka patent 2,147,860, issued in 1989’, discloses the general combination of a scoop, rearwardly inclined slot and spoiler in an airfoil. The scoop and spoiler, referred to as bleeders in the Zaparka specification, are attached, respectively, to the rear of the slot and the front of the slot and are *339 operable to either slot-open, or slot-closed position through a common control means.
24. Griswold patent 2,261,363, issued in 1941, relates to aircraft lateral control systems including spoilers for obtaining effective rolling moments. One of the objects of the Gris-wold invention is stated as follows:
Another object resides in the provision of improved lift spoilers including flow deflectors mounted in an airflow passage extending through the wing to increase their effectiveness and to eliminate the lag inherent with certain types of spoilers known to the prior art.
The testimony of Mr. Griswold, the patentee, indicates that he reduced the problem of lag by providing a continuously open slot, and that the movement of the spoiler and scoop was to effect desirable yaw and to obtain a favorable balance of control forces.
25. NACA Report 706 published in 1945 discloses the results of an investigation made on behalf of the National Advisory Committee for Aeronautics into various types of lateral control devices. The purpose of the investigation is set forth in the report in the following terms :
The present investigation was undertaken for the purpose of developing a lateral-control device which could be used with any type of full-span trailing-edge high-lift device, which would be mechanically simple, and which would have better aerodynamic characteristics than devices previously tested. In this series of tests, the devices comprised various combinations of a simple upper-surface spoiler, a lower-surface flap or deflector, and a slot through the wing. * * *
The NACA investigations were conducted in a 7- by 10-foot wind tunnel on wing models with full-span split and slotted flaps. Various combinations of scoop-slot-spoiler elements for effecting lateral control are set forth in figs. 15,16,17,19, 20, and 21 of the NACA Report 706. Different but related movement between a scoop and spoiler is suggested by figs. 16(a), (b), and (c).

*340

26. The accused A3J aircraft is a high speed swept-back wing aircraft designed for the Department of the Navy for the specific purpose of operating from an aircraft carrier. It is capable of flight at speeds in excess of the speed of sound. During the testing and development of the A3J lateral control system, a normal spoiler system operating on only one wing was employed. This system developed excessive yaw. To eliminate this undesirable yaw, the A3J lateral control mechanism is a highly sophisticated system *341 which employs six slot assemblies, three spoiler, slot and scoop assemblies on each wing, with one assembly on each wing being inverted. A diagrammatic view of the A3J is reproduced herein.
27. The A3J lateral control system is normally an electrically controlled, hydraulically operated, irreversible system which provides means for controlling the aircraft about its longitudinal axis. The A3 J lateral control system comprises an inboard assembly, an intermediate or centerboard assembly, and an inverted outboard assembly on each wing. The inboard and centerboard spoiler-scoop assemblies of each wing are interconnected with the outboard spoiler-scoop assemblies on the opposite wings through a mechanical actuating system. When the outboard spoiler on one wing is operated, the inboard and centerboard spoilers are operated on the opposite wing, and vice versa, thereby providing a left-hand and a right-hand system. In a left bank or turn, the inboard and intermediate assemblies spoil or reduce the lift on the left wing while the inverted assembly on the right wing augments lift to provide a desirable rolling maneuver to the left. A similar action occurs for a right bank or turn.
28. On each wing of the A3J the leading edge of the scoops on the lower surface and all the spoiler hinge points on the upper surface are connected at the 65 percent chord of the wing while the trailing edge of the spoilers on the upper surface and all the scoop hinge points on the lower surface are connected at the 75 percent chord of the wing. The chord lengths of the spoilers and scoops are approximately equal with the spoiler and scoop of each assembly being substantially in vertical alignment with each other. Each spoiler of the A3 J is directly connected to a scoop by a push rod and arranged so that the initial movement of the spoilers causes the simultaneous initial movement of the scoops. The scoops and spoilers move :in unison with an angular ratio between each spoiler and scoop of approximately 2:1. The relative angular movement between each spoiler and scoop remains constant throughout the operating range of the control system. The scoop of each spoiler-scoop assembly utilized in the A3 J lateral control system does not initially open prior to or more rapidly than the corresponding spoiler.
*342 29. Plaintiff contends that tbe A3J and A5C aircrafts, procured by tbe defendant during tbe 6-year period preceding the filing of this suit, include lateral control devices which infringe claim 2 of the ’829 patent in suit. It is agreed by the parties that for purposes of this suit, the lateral control systems of the A3 J and A5C aircrafts are substantially identical. Claim 2 of the patent in suit recites means for moving the spoiler and scoop of the lateral control device to different but related positions. The accused A3 J construction utilizes a differential movement of the spoiler to scoop wherein the spoiler is opened at an angular rate of approximately 2:1 relative to the scoop.
30. Plaintiff contends that the language of claim 2 must be interpreted to include the differential relative movement of the spoiler to scoop as employed by the accused A3 J lateral control device. The patent in suit is not a pioneer patent. As noted in finding 13 above, the aircraft lateral control device art is a crowded art and a number of prior patents and publications disclose lateral control devices employing spoiler-slot-scoop assemblies. In prosecuting the application for the patent in suit before the Patent Office it was necessary for the applicant to limit the phrase different tut related positions to mean that the scoop was initially opened prior to or more rapidly than the spoiler. Claim 2 of the ’829 patent in suit, interpreted in light of its specification, the prior art, and the file history, and strictly construed, has not been used by the defendant in the defendant’s A3 J or A5C aircraft.
31. Summarizing findings 26 through 30 above, it is found that the accused aircraft does not come within the strict construction which must be given to claim 2 of the patent in suit, and that the structure recited in claim 2 has not been used and said claim has not been infringed by the accused A3J and A5C lateral control systems.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and its petition is therefore dismissed.

This opinion Is based, with changes and added discussion, on the opinion prepared, at the direction of the court, by Trial Commissioner Donald E. Lane.

 Plaintiff relies on a number of Second Circuit cases (see Haliczer v. United States, 174 Ct. Cl. 507, 513, 356 F. 2d 541, 544 (1966)) rejecting, in some circumstances, statements by a patent-claimant’s attorney to the Patent Office as ground for invoking file-wrapper estoppel. We are not certain of the present status of those decisions even within the Second Circuit, but in any event we do not think they should be read as precluding use of the prosecution history as an aid to interpreting the true meaning of the claim (rather than to establish the technical defense of estoppel) where the applicant has taken a deliberate, formal position, as here, to induce allowance of the claim. Cf., Westinghouse Electric Corp. v. Hanovia Chem. & Mfg. Co., 179 F. 2d 293, 297 (C.A. 3, 1949); Southern States Equipment Corp. v. USCO Power Equipment Corp., 209 F. 2d 111, 121 (C.A. 5, 1953).

 Cited by tie Patent Office against the patent in suit.

NACA Report 7106 was printed in 1941 but not made available to the public until December 19, 1945.

Cited by the Patent Office.

Cited by the Patent Office.

Reference of record against the patent in suit.