**BAKER MANUFACTURING COMPANY,**
Plaintiff,

v.

**WHITEWATER MANUFACTURING
COMPANY, Defendant.**

No. 65–C–122.

United States District Court
E. D. Wisconsin.

April 24, 1969.

Paul R. Puerner, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff.

Bernard Goldstein, Bass & Goldstein, Allen B. Wheeler, Wheeler, Wheeler & Wheeler, Milwaukee, Wis., for defendant.

## OPINION

MYRON L. GORDON, District Judge.

This is a patent infringement suit. The plaintiff seeks an accounting, treble damages and an injunction.

The defendant has pleaded invalidity, noninfringement and has also raised several affirmative defenses. In addition, the defendant has counterclaimed for a declaratory judgment that each claim of the plaintiff's patent is invalid.

The plaintiff's patent (Baker patent no. 2,657,633) was issued on November 3, 1953, and relates to what is known as a "pitless adapter". The parties have stipulated that the only claims of the patent in issue are number 1, 3, 5 and 10.

Prior to the advent of pitless adapters, well water was discharged into a dwelling from the top of the well casing, and it was necessary to protect such discharge lines from freezing in cold weather. This was accomplished by using a heated well house, an underground well pit, or by locating the well in the basement of the dwelling. These methods of construction presented sanitation and other hazards which the pitless construction was designed to eliminate. In a pitless construction, the well casing extends above the ground, but the delivery pipe leading to the dwelling is located below the frost line, and the entire well system is permanently buried underground. The unit is watertight to prevent contamination, and the water flowing from the well to the dwelling is not subjected to freezing temperatures.

The mechanics of a pitless unit may be described as follows: well water is pumped up from the well through a drop pipe and into a spool which is contained in the sleeve. The spool serves to direct water through a check valve and out the side outlet of the sleeve. From there, the water flows through the delivery pipe into the dwelling. The device for getting the well water into the delivery pipe is called a "pitless adapter".

The parties have stipulated that the court's determination on the issue of whether the defendant's pitless adapter units of the type exemplified by plaintiff's exhibit 26 and plaintiff's exhibit 39 infringe any claim of the Baker patent in suit will apply with equal force to other types of pitless adapters manufactured and sold by the defendant as exemplified by plaintiff's exhibits 39e, 39m, 39n and 39p.

There was a trial to the court on the liability issues only. This opinion constitutes the court's findings of fact and conclusions of law in accordance with rule 52(a), Federal Rules of Civil Procedure.

## I. OBVIOUSNESS

The defendant contends that the plaintiff's patent is invalid because of obviousness. (35 U.S.C. § 103). In Graham v. John Deere Co., 383 U.S. 1, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court set forth the applicable criteria pursuant to § 103, for determining whether the subject matter taken as a whole would have been obvious at the time of the invention to one having ordinary skill in the art. The court stated at pages 17–18, 86 S.Ct. page 694:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

### The Baker Claims

The following is a summary of the claim elements of the Baker patent: (A) a tubular casing having an upper and lower section; (B) a tubular sleeve; (C) axially spaced internal cylindrical surfaces in the sleeve which are of smaller diameter than the inside diameter of the upper casing; (D) an abutment inside the sleeve (upon which the spool rests); (E) a drop pipe; (F) a tubular spool; (G) seal rings of yieldable material (specified as "O-rings") extending around the spool and respectively engageable with the cylindrical sealing surfaces of the sleeve; (H) a centering means rigidly mounted on top of the spool; and (I) an undercut (a machined surface) around the discharge opening of the spool to prevent damage to the lower O-ring.

In operation, the spool (upon which the O-rings are mounted) passes freely through the upper casing for subsequent compression into sealing engagement with the cylindrical surfaces as it is inserted into the sleeve. This concept of radial compression of O-rings into sealing engagement with a pair of cylindrical surfaces is provided by the interaction of claim elements C and G. The centering means substantially eliminates damage to the O-rings and the internal cylindrical surfaces by preventing the O-rings from rubbing on the abrasive casing walls. The end result is the prevention of leakage.

■ The Baker patent is an improvement patent. It has been held that a novel and unobvious combination of old elements which cooperate to produce a new and useful result or a substantial increase in efficiency is patentable. Welsh Co. v. Chernivsky, 342 F.2d 586 (7th Cir. 1965); Copease Mfg. Co. v. American Photocopy Equipment Co., 298

F.2d 772 (7th Cir. 1961). A basic inquiry in this case is whether the Baker patent represents an unobvious combination of old elements.

The more critical claim elements of the Baker patent, insofar as this action is concerned, are the centering means, the cylindrical sealing surfaces, and the use of O-rings. The evidence establishes that O-rings were old in the art. By pretrial stipulation, the parties have agreed that the Baker O-ring combination is not shown in any single prior art reference; however, by pointing to accumulated characteristics of the prior art, the defendant seeks to show that such prior art teaches the Baker claims.

### The State of the Prior Art

The defendant has referred the court to several prior art references; these may be broken down into two categories: (1) patents relating to pitless adapters, and (2) patents relating to oil and gas wells. Contained in the first category are the *Lageson* (no. 2,252,773), *Andrew* (no. 2,230,856), *Butterfield* (no. 2,578,669) and *Buvinger* (no. 1,541,111) patents, and the *Watry* sketch (Def. exh. 4). The second category consists of the *Humason* (no. 1,901,031), *Thompson* (no. 2,042,745), and *McDonough* (no. 2,118,094) patents.

The plaintiff contends that the oil and gas well references are not analogous arts because they are not concerned with the objectives sought to be attained by the Baker patent. This argument is not convincing. Whether arts are analogous depends upon the similarity of their elements and purposes; if the elements and purposes in one art are related and similar to those in another art, and by reason of that relation and similarity make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, such arts may be said to be analogous; if the converse is true, they are nonanalogous. Copeman Laboratories Co. v. General Plastics Corp., 149 F.2d 962, 963–964 (7th Cir. 1945).

In the *Thompson* and *McDonough* patents, O-rings are employed for sealing purposes. While the overall purposes of these two patents appear to differ from the Baker patent, I am not convinced that the differences are so great as to be termed "nonanalogous". Indeed, the *Humason* patent was cited in the *Butterfield* "Pitless Pumper" patent (no. 2,578,669); the *Andrew* "Water System" patent (no. 2,623,467); and by the patent office during the prosecution of the patent in suit. In addition, the *McDonough* patent was cited in the *Andrew* patent mentioned above.

### Prior Art Compared with the Baker Patent

Turning first to the pitless adapter art, the *Lageson* and *Andrew* patents are ones that relate to spool-type adapters, and both utilize "cup leathers" (for sealing the spool in the sleeve) as opposed to O-rings. Neither use a centering means. *Butterfield* and *Buvinger* refer to pitless adapters wherein a tapered head is used to provide metal-to-metal seals.

Turning next to the oil and gas well references, *Humason* does not appear to be a particularly relevant reference. *Thompson* and *McDonough*, on the other hand, show O-rings used in connection with tapered heads and tapered sealing surfaces.

The defendant places special emphasis on the *Buvinger, Thompson* and *McDonough* patents and the *Watry* sketch. The main thrust of the defendant's argument with respect to the obviousness of the Baker combination is apparent from the following statement concerning the Watry sketch, appearing at page 13 of the defendant's brief:

"It had a conical spool, and probably had sealing rings (Baker deposition p. 5), *which would necessarily be protected and centered by the upper part of the conical spool* . . . This is so whether metal-to-metal seals or sealing rings were intended." (emphasis added)

At page 16 of its brief, the defendant states:

> "If Watry and Buvinger are not regarded as teaching a structure which acts as a centering means to protect the seal rings, certainly McDonough and Thompson do so."

I am not persuaded that the *Buvinger* and *Watry* references teach the Baker O-ring combination. *Buvinger* is lacking in several of the Baker claim elements: (B), (C), (G), (H) and (I). Instead of a cylindrical spool with O-rings, it uses a tapered head with metal-to-metal seals. The *Watry* sketch is similar to *Buvinger*.

In my opinion, neither *Thompson* nor *McDonough* teach the O-ring combination. Both patents utilize tapered heads and tapered sealing surfaces as compared to a tubular spool with cylindrical sealing surfaces. In both patents, the tapered heads upon which the O-rings are mounted are inserted only a few inches into the top of the well casing; there is no concern with the problem of lowering a spool with O-rings several feet down into a well. Thus, it is understandable that neither patent mentions a centering means for O-ring protection. The defendant contends that tapered heads teach a centering means; however, the defendant has not shown that such a structure would perform a centering function as effectively as the Baker centering means. I do not believe that conical sealing surfaces teach the cylindrical sealing surfaces specified in claim elements (C) and (G) of the Baker patent. As pointed out by Mr. Baker at page 8 of his deposition, a cylindrical surface uses less material than a conical one so it is less expensive to manufacture.

The Baker combination represents a "simple environment" in which to use O-rings; taken as a whole, there is nothing in the prior art which suggests the Baker combination.

■ Under 35 U.S.C. § 282, a patent is clothed with a presumption of validity which can be overcome only by clear and cogent evidence of invalidity. Ortman v. Maass, 391 F.2d 677, 681 (7th Cir. 1968). This has been described as a "heavy burden". King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., 357 F.2d 875, 879 (7th Cir. 1966). In addition, it has been held that this presumption is reinforced where the prior art relied on by the defendant is no more in point than the art which had already been considered and rejected by the patent office Schnell v. Allbright-Nell Co., 348 F.2d 444, 448 (7th Cir. 1965).

In the instant case, *Lageson, Humason* and *Butterfield* were considered and rejected by the patent examiner. At trial, the defendant's own expert, Mr. Koerper, testified that no one of the prior art references was more pertinent than another. However, the defendant now argues, unconvincingly, that *Buvinger* and *Watry* are more pertinent.

The so-called "secondary considerations" which bolster the validity of a patent under Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), support the plaintiff's position. The evidence establishes that the Baker combination is a more efficient and less costly product. Attempts to design pitless adapters go back to the 1920's (Def. exh. 13); pitless adapters of one kind or another have been on the market since 1934 (Pl. exh. 33, 42).

Prior to the Baker patent, the use of "cup leather" seals was predominant in the pitless environment. Messrs. Baker and Rasmussen testified that cup leathers tended to adhere to the well casing when the spool was removed for servicing; that in some cases, it was necessary to dig up the entire pitless unit in order to separate the spool from the casing; that cup leathers cost at least three times more than O-rings; that a single O-ring can accomplish the same job as two cup leathers; and that the use of O-rings has resulted in substantial savings in terms of labor and material.

The fact that both parties to this suit, as well as Duplex Mfg. Co. (which has taken a license under the patent in suit from Baker) utilize them, is some evi-

dence of the widespread acceptance of O-rings in a pitless environment.

The defendant maintains that there was no evidence of widespread dissatisfaction with cup leather seals, and that there was no evidence of a vigorous search for improved seals. However, the record shows that approximately 75% of the industry has replaced cup leathers with O-rings. In my opinion, the sealing means introduced by Baker has been recognized by the industry as an improvement; I view such acceptance as evidence of commercial success.

■ I find that the Baker combination represented, at the time of its invention, an improvement over the prior art. The fact that skilled and experienced men in the art have attempted, and failed, to solve long standing needs in the industry is indicative of nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); National Dairy Products Corp. v. Borden Co., et al., 394 F.2d 887 (7th Cir. 1968). In the instant case, there is sufficient evidence of attempts by persons skilled in the pitless adapter art to improve upon that art; however, no one developed the combination here in issue. In 1941, Messrs. Andrew and Lageson had the benefit of the *Buvinger, Humason, Thompson* and *McDonough* disclosures; yet they failed to hit upon the O-ring combination with its attendant benefits and advantages. It is impressive that the Baker combination has virtually replaced the prior art.

■ It is the conclusion of the court that the Baker combination was not obvious at the time of invention; it represented a meaningful step forward in the improvement of pitless adapters.

■ The admonition of the court in Zegers v. Zegers, Inc., 365 F.2d 156, 159 (7th Cir. 1966) seems particularly appropriate here:

"There is no doubt * * * that the fact that the solution to a problem is simple, or appears so, when viewed in retrospect, does not mean the solution was obvious when it was made, and that courts must guard against the exercise of hindsight in assessing the obviousness of a given improvement in the art."

## II. INFRINGEMENT

The Whitewater unit is a spool-type adapter, utilizing thicker O-rings than those used by Baker. While the Baker spool is supported in the sleeve on a continuous conical surface (located at the bottom of the spool), the Whitewater unit is supported on "support ears" or lugs at the top. (Def. exh. 26). It is these support ears, which are comprised of outwardly projecting lugs, that the plaintiff contends infringes its "centering means".

Relying upon Graver Tank and Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), the plaintiff contends that the defendant's device falls within the Baker patent claims. In the *Graver Tank Case,* the court said at page 607, 70 S. Ct. at page 855:

"In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it."

The main question on the issue of infringement is whether the defendant's device embodies the centering means cited in the Baker claims. The centering means recited in claim 3 reads as follows:

"centering means rigid with said spool above said rings projecting outwardly from the spool flanges beyond the outer periphery of the upper ring but short of the casing wall and engageable with the latter during insertion and removal of the spool whereby to prevent rubbing of said upper seal ring against said casing wall." (Pl. exh. 1)

The plaintiff argues that Mr. Stevenson, president of the defendant company, has admitted that the defendant's projecting

lugs are rigid with the spool; that they project outwardly from the spool beyond the outer periphery of the upper O-ring and short of the casing wall; and that a Whitewater unit is capable of being installed so that a lug will engage the well casing and prevent O-ring rubbing. These features, it is urged, are sufficient proof of infringement within the rule of *Graver Tank*.

The defendant, however, disputes the scope of the Baker claims and contends that the Whitewater device does not fall within their literal language. In this regard, the defendant advances the following arguments: (1) The Baker patent is limited to a centering means which will *always* prevent O-ring rubbing, and that the claims do not include a device wherein the sealing rings *might* touch the casing wall; (2) the Baker claims are limited to a *single*, continuous centering means, and exclude multiple lugs; and (3) the Baker claims are limited to the use of *slender* O-rings and do not cover the thicker type of O-rings used by the defendant.

■ When construing the meaning of claims, it is proper to refer to the specifications of the patent and to pertinent comments made during the prosecution of the patent. Ortman v. Maass, 391 F. 2d 677, 680 (7th Cir. 1968); Lavelle Aircraft Corp. v. United States, 358 F.2d 1005, 175 Ct.Cl. 325 (1966).

The court will treat each of the defendant's arguments separately.

(1) *Is the Baker patent limited to a centering means which will always prevent O-ring rubbing?* In support of its position, the defendant refers to the following statement of the patent examiner (Def. exh. 8 at p. 50):

> "Claim 5 is rejected as failing to define invention over Lageson. The lock nut 38 [on Lageson] may be termed a 'means' * * * and may well engage the casing wall during the insertion." (matter in brackets supplied)

The defendant then refers to Baker's reply, contained in defendant's exhibit 8 at page 58, as follows:

> "Claim 5 has been amended to emphasize the projection of the rigid means or flange 30 outwardly *beyond the outer peripheries of the seal rings* so as to be engageable with the interior of the well casing and prevent rubbing contact between the latter and the seal rings. The element 38 of Lageson is merely a lock nut and no part of it projects outwardly beyond the seal ring 36. Thus it is always possible for the seal ring to slide against a surface of the well casing and thus become damaged as it is being inserted into final sealing position."

The above-quoted statement does not sustain the defendant's position; rather, it distinguishes the *Lageson* reference from the claim language by pointing out that the lock nut of *Lageson* provides no centering means at all. There is nothing in the Baker claim language which provides that the centering means must *always* prevent O-ring contact. The claims speak of a device which is "engageable" with the interior of the well casing. It is more reasonable to believe that such language is aimed at distinguishing the Baker device from one which will always cause the O-rings to rub.

(2) *Are the Baker claims limited to a single, continuous centering means, excluding multiple lugs?* The defendant observes that the plaintiff has emphasized the continuity of the centering means, pointing to page 39 of defendant's exhibit 8 wherein it is stated:

> "the lugs or centering elements are joined together and form a continuous peripheral flange 30 * * *"

This statement was made as an amendment and was directly responsive to the following criticism of the examiner:

> "Claims 1 and 3 are rejected as being indefinite or inaccurate. It is not clear what structure is referred to by the 'centering elements' as only one centering flange 30 is shown in the drawings." (Def. exh. 8, p. 37)

The plaintiff points specifically to the term "lugs" and argues that the center-

ing means defined in the patent could be comprised of non-continuous lugs such as those employed by Whitewater. This interpretation appears to be verified by the file history (Def. exh. 8) where, at page 57, the applicant's attorney explained:

> "In connection with claims 1 and 3 it is believed to be proper to consider the centering flange 30 as composed of an infinite number of radially projecting centering elements *for obviously it is not necessary that the flange be continuous in order to perform the desired function of centering the spool * * * "* (emphasis added)

With respect to the claim language, the examiner persisted:

> "Claim 3 is rejected as being inaccurate. The disclosure includes only one centering element, e. g. the ring 30. In line 10, applicant has recited 'centering elements'. Claim 3 is otherwise allowed." (Def. exh. 8, p. 65)

Finally, at page 67 of the file history, the plaintiff was allowed to submit the following amendment: *"Claim 3,* line 10, erase 'elements' and substitute—means—."* The specifications, however, still contain the words "lugs or centering elements".

On the basis of the above-cited file history, the defendant maintains that "obviously the examiner interpreted this phrase ["centering means"] as limited to a single flange 30 or allowance would not have followed." (Brief, p. 3).

In my opinion, the "centering means" referred to in claim 3 is not necessarily limited to a continuous peripheral flange. In light of what transpired at the prosecution stage, it may reasonably be interpreted to include multiple lugs. The statement of the applicant's attorney (Def. exh. 8, p. 57) was before the patent examiner, who, I believe, understood that the claimed centering means is not limited to a continuous flange.

■ A patent is not limited to the specific embodiment of the invention shown and described in the specification. It is the claims of the patent that mea-

sure the invention. King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., 357 F.2d 875 (7th Cir. 1966); Eversharp, Inc. v. Fisher Pen Co., Inc., 204 F.Supp. 649 (N.D.Ill.1961). The following language from 35 U.S.C. § 112 seems relevant:

> "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

(3) *Are the Baker claims limited to the use of slender O-rings?* The defendant asserts that the claims cannot be valid if interpreted to cover any and all "seal rings of yieldable material" because that would include cup leathers "which do not require or particularly benefit from plaintiff's centering means." The defendant states that cup leathers are not included for the same reasons that the defendant's "very unusual O-rings which * * * are not damaged by wall contact" are not included. The plaintiff agrees that the patent in suit is limited to the use of rubber O-rings.

In defining the term "seal rings of yieldable material" as used in the claims, the patent states as follows: "Watertight seals around opposite ends of the spool are formed by a so-called 'O' ring 25 of yieldable material such as rubber . . . "

The patent claims or specifications do not mention any size limitation with respect to O-rings. The only limitation specified in the patent is that the seal ring be an O-ring of yieldable material such as rubber. The defendant uses a rubber O-ring.

■ A further guideline in determining the question of infringement is the doctrine of equivalents, i. e. there is infringement if the accused device achieves substantially the same results in substantially the same way as the

patented device. Graver Tank and Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., 357 F.2d 875 (7th Cir. 1966).

It is the plaintiff's position that the support ears or lugs on the accused device act as centering means to protect O-rings. In a courtroom demonstration involving a Whitewater sample pitless adapter (Def. exh. 26), Mr. Baker showed that it is capable of engagement with the casing wall to prevent O-ring rubbing. When asked if the lugs are "capable" of engagement with the upper casing, Mr. Stevenson answered in the affirmative.

The plaintiff called Mr. Rasmussen, who has had extensive experience in the well equipment field, and who has personally installed Baker and Whitewater pitless adapters. He explained that it is his standard practice when installing a Whitewater unit to make sure that one of the lugs is positioned for engagement with the casing wall. He stated two reasons for doing this: (1) to prevent possible damage to the O-rings, and (2) to prevent abrasive materials on the casing wall from being carried down on the O-rings to the sealing surfaces in the sleeve where such material might damage the sealing surfaces and cause a leak.

The plaintiff has presented persuasive evidence to show that the accused device performs substantially the same function (protection of O-rings) in substantially the same way (via the support ears or lugs which act as a centering means) to achieve the same result as the Baker combination.

The defendant, on the other hand, takes issue with the essential facts adduced by the plaintiff. The defendant insists that its O-rings are thicker than Baker's; that they are not as readily susceptible to damage; that even though they might rub against the casing walls, they still effectively perform their sealing function; and that therefore, the accused support lugs are not required to perform the protective function which is the hallmark of the plaintiff's centering means.

The testimony shows that the defendant's device will not protect the O-rings from rubbing unless a lug is manually positioned against the casing wall with a "side force" as the spool is being lowered into the sleeve. Messrs. Tubbs, Stevenson and Olson, defense witnesses, all attempted to contradict Mr. Rasmussen's testimony concerning the manner in which a Whitewater unit is installed in the field. They also testified that Whitewater does not instruct installers to insert the spool in the manner related by Messrs. Baker and Rasmussen. In addition, they stated that Whitewater "discharge heads" are installed in the factory without regard for O-ring rubbing.

I am of the opinion that the defendant's device falls within the doctrine of equivalents. Although it differs in name, form and shape, the accused structure does the same work in substantially the same way to achieve the same result as the patented device.

Notwithstanding the defendant's contention that a centering means is not required on its unit because of the thickness of its O-rings, the evidence in this case persuades me that the accused structure has been used in such a way that the lugs constitute a centering means for O-ring protection.

▮ Although it appears from the evidence that the defendant's unit, when installed in the manner prescribed by the plaintiff's witnesses, may not be as effective as the Baker unit because there is a possibility that the lugs will not be properly positioned, I deem this insignificant. The practice of a patented invention in an imperfect or less effective way does not avoid infringement. Rex Chainbelt, Inc. v. General Kinematics Corp., 363 F.2d 336 (7th Cir. 1966).

▮ There was evidence to show that the defendant does not take precautions to guard against O-ring rubbing when installing its "discharge heads" in the factory, and that the defendant does

not instruct installers to install its units in the manner described by the plaintiff's witnesses. In my view, these facts are of no great moment. Infringement is measured by results; not by intent. C. H. Dexter & Sons, Inc. v. Kimberly-Clark Corp., 292 F.2d 371 (1st Cir. 1961); Guiberson Corp. v. Equipment Engineers, Inc., 252 F.2d 431 (5th Cir. 1958). In the case at bar, it was amply demonstrated that the defendant's device can and does act as a centering means.

■ In summary, then, the court concludes that the defendant's structure falls within the language of the Baker patent claims; that it is capable of performing in the manner outlined in the claims; that it is, in fact, used to peform substantially the same function as the plaintiff's structure in the same general manner with the same basic results.

### III. WILFUL AND WANTON INFRINGEMENT

■ Citing 35 U.S.C. §§ 284 and 285, the plaintiff requests treble damages and reasonable attorneys fees. In my judgment, these issues should not be decided at this time. The defendant did not anticipate these matters being raised at this stage of the proceedings. At page 27 of its brief, the defendant states that "these issues are severed for later trial" and that "(t)his is why there is no evidence as to some of the points, such as reliance on advice of counsel".

Pretrial stipulations resulted from a pretrial conference, but there were no discussions between counsel and the court with respect to treble damages. Were the court to decide such issue now, the possible injustice to the defendant would be great; the burden imposed upon the plaintiff by postponing the question of treble damages for the subsequent damage proceedings would be relatively minor.

### IV. OTHER DEFENSES

The defendant has raised several defenses going to the ability of the plaintiff to maintain this action: (1) improper joinder of inventors; (2) un-

clean hands; (3) laches; and (4) illegal combination.

#### (1) *Improper Joinder of Inventors*

■ The Baker patent in suit purports to be the joint invention of John Gordon Baker, Lyell C. Tullis, and Louis T. Watry. Whitewater contends that Mr. Watry was not a joint inventor, and for this reason, the patent is invalid.

Mr. Watry's signature appears on the original oath for the Baker patent, together with those of Messrs. Baker and Tullis; after the claims were allowed, all three again executed an oath reaffirming that they were joint inventors. There is evidence that Mr. Watry read the oaths before signing, believing that they were true. Mr. Watry had been employed with the Wisconsin State Board of Health. In his capacity as a state employee, he contacted many manufacturers with respect to developing an improved pitless adapter which would meet the state board's sanitary requirements. Baker Manufacturing Company attempted to create a new design. Such work originated with the arrangement shown on the Watry sketch (Def. exh. 4), which arrangement, after consultation between Messrs. Watry, Tullis and Baker, finally evolved into the Baker patent.

Although it is not clear exactly how much Mr. Watry contributed beyond the original idea, there is evidence that he did participate in and contribute to the invention. Mr. Baker's recollection is supported by Mr. Tullis, who, at a deposition, stated that the patent evolved as a result of "group action".

At his deposition, Mr. Watry seemed hesitant to state that he was an "inventor". The deposition was taken in 1967, some 20 years after the invention, when Mr. Watry was 80 years old; it is understandable that he had some difficulty in remembering the exact details leading up to the Baker patent.

■ It is generally agreed that this defense is a technical one regarded by the courts with disfavor and requiring

clear and convincing proof to sustain it. See Klein v. American Casting and Mfg. Corp., 87 F.2d 291; Kendall Co. v. Tetley Tea Co., Inc., 189 F.2d 558 (1st Cir. 1951); John Blue Co., Inc. v. Dempster Mill Mfg. Co., 172 F.Supp. 23 (D.C.Neb. 1958). In my judgment, the defendant has failed to carry its burden.

### (2) Unclean Hands

The defense of unclean hands is grounded upon two theories: (1) that Mr. Baker knew that Mr. Watry was not a joint inventor, and (2) that Mr. Baker took an assignment from Mr. Watry, "a man who had recently been enforcing well codes for the Board of Health", when Baker "had no exclusive right to ideas developed by a State employee, and given to other manufacturers freely by Watry."

The first theory has already been disposed of; the second theory is deemed to be without merit. The record does not establish that Mr. Watry worked on the Baker patent while employed by the state; he signed the oath for the patent after his relationship with the state had been severed for more than a year. Mr. Baker testified that Mr. Watry's name was never used to gain a competitive advantage, and that his name was never used on Baker sales literature.

The record is devoid of facts upon which the court could draw an inference of unclean hands on the part of the plaintiff or Mr. Watry.

### (3) Laches

The defendant contends that the plaintiff's suit is barred by the equitable doctrine of laches.

In 1955, the defendant began using the O-ring combination. In February, 1956, Baker gave the defendant written notice of infringement. A conference was held at which Messrs. Tubbs, Stevenson and Baker were present; at that time, the defendant neither admitted nor denied infringement. According to Mr. Baker, the defendant stated that it needed time to consider the Baker patent.

On September 19, 1957, Mr. Baker wrote to Messrs. Stevenson and Tubbs, stating "I believe we can now resume the negotiations which we tabled about a year ago * * *" (Pl. exh. 11). The letter went on to propose licensing agreements. The parties have stipulated that (1) the defendant neither attempted nor did in fact communicate with the plaintiff regarding the patent in suit subsequent to September 19, 1957 through April 29, 1965, the date this suit was instituted, and (2) the defendant does not know of any written or oral communication in which the plaintiff represented that the charge of infringement had been settled.

Mr. Baker testified that after failing to receive a response, he concluded that further negotiations would be fruitless and proceeded to consult counsel with respect to what the next course of action would be, particularly as to the expense involved in prosecuting an infringement action. The plaintiff's attorney estimated that such an action would cost approximately $15,000. At the same time, Baker conducted a sales survey to determine the volume of sales of its competitors' pitless adapters, including Whitewater's. As a result of such survey, the plaintiff concluded that due to the relatively modest potential recovery as compared to the litigation expense, it would be unwise to proceed then with a law suit.

It has been held that "poverty is no excuse" for delay in instituting an infringement action. See e. g. Whitman v. Walt Disney Productions, Inc. 148 F. Supp. 37, 40 (S.D.Cal. 1957) and cases cited therein. The court of appeals for the 7th circuit, however, has indicated that lack of funds might constitute a valid excuse. See Brennan v. Hawley Products Co., 182 F.2d 945, 948 (7th Cir. 1950).

Mr. Baker testified that in 1958, Whitewater considerably enlarged its line of pitless adapters and that in 1959, Duplex Manufacturing Company also began using the O-ring combination. He testified that the plaintiff did not become

aware of these facts until sometime in 1961, and in the case of Duplex, sometime betwen 1961–1962. Thus, he stated, the infringment problem "was much different than it had been in the previous period."

The doctrine of laches was discussed in Pierce v. International Telephone and Telegraph Co., 147 F.Supp. 934 (D.C. N.J. 1957) as follows:

> "Basically the doctrine of laches is a principle of equity. The issue for the Court to decide is whether or not it is equitable to permit plaintiff's suit to proceed against defendant. * * * In other words, the court of equity must, as usual, balance * * * the equities * * *. Accordingly, the action of the plaintiff alone, in delaying the start of its suit, is not the sole criterion. Indeed, the Patent Act itself penalizes such delay, in preventing plaintiff from recovering from defendant any damages which plaintiff has suffered at defendant's hands previous to the last six years before suit filed, 35 U.S.C. § 286 * * *.

> "But it is not the lapse of time alone that constitutes laches. The further question remains as to what else plaintiff has done, or failed to do, and how his action or inaction in that regard have adversely affected defendant. These factors, normally known as prejudice to defendant, are of equal moment with delay, in determining the existence of equitable laches. " * * * (T)he United States Supreme Court has stated that to constitute laches the defendant must have had good reason to think that plaintiff believes his asserted rights to be worthless or that he has abandoned them. Galliher v. Cadwell, 1892, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738."

The court of appeals for the 7th circuit has used a "balancing of the equities" approach in determining laches, Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 135 F.2d 617, 619 (7th Cir. 1943), and has held that the determination of laches calls for the exercise of sound discretion by the trial court.

See Boris v. Hamilton Mfg. Co., 253 F. 2d 526, 528 (7th Cir. 1958).

Notwithstanding the plaintiff's delay, I do not believe that the defendant is justified in its asserted belief that the plaintiff had abandoned its claim. The evidence reveals that the defendant received early notice of infringement; that after initial negotiations, the defendant ignored the plaintiff's request for further negotiations and settlement; and that at no time did the plaintiff suggest that it was abandoning its claim of infringement.

I conclude that enforcement of the plaintiff's claim will not work an injustice. The plaintiff is barred by the 6 year statute of limitations (35 U.S.C. § 286) from suing for damages incurred before 1959, but it is not inequitable to require the defendant to defend the instant action.

### (4) Illegal Combination

The final defense is based upon the allegation that the Baker patent is being used to coerce and harass the defendant. On December 21, 1967, Baker and Duplex entered into a cross-licensing agreement (Def. exh. 2). By its terms, Baker obtained rights under two Duplex patents, and Duplex obtained rights under the Baker patent in suit.

After Baker took said licenses from Duplex, it was believed that Whitewater was infringing one of the Duplex patents. Pursuant to a clause in the license agreement which required it to do so, Duplex commenced a law suit against Whitewater in the United States district court for the western district of Wisconsin. According to the testimony of Mr. Baker, the suit was dismissed for improper venue. The defendant claims that Duplex is threatening suit in the eastern district of Wisconsin.

Based on the foregoing, the defendant contends that the Baker patent has been used to acquire power to force Duplex to sue the defendant and that this is a "combination" against the defendant. The defendant argues that even if it is found to be an infringer, "no relief

should be permitted where plaintiff has combined with Duplex to subject defendant to two patent suits rather than one."

The agreement between Baker and Duplex appears to be a routine type of license agreement; it provides that the licensee is not obligated to pay royalties if competitors are freely allowed to infringe by the licensor. I see no merit in the defendant's contention that since it may have infringed two separate patents owned by two separate companies, both companies should not be allowed to sue.

## V. CONCLUSION

The court finds that the Baker patent no. 2,657,633 (claim nos. 1, 3, 5, and 10) is valid and infringed; that the suit is not barred by laches, unclean hands, illegal combination or improper joinder of inventors. Whether treble damages are to be granted because the infringement is claimed to have been wilful shall be resolved at subsequent proceedings relative to damages. The defendant's counterclaim for a declaratory judgment is dismissed.